Nos. 24-1294, 24-1357

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Secretary of Labor, Mine Safety and Health Administration,
Petitioner,

*v.*

Crimson Oak Grove Resources, LLC, et al.
and Federal Mine Safety and Health Review Commission,
Respondents.

Secretary of Labor, Mine Safety and Health Administration,
Petitioner,

*v.*

County Line Stone Company, et al.
and Federal Mine Safety and Health Review Commission,
Respondents.

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

**Brief of the Secretary of Labor**

LORI CHAVEZ-DEREMER
Secretary of Labor

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

SUSANNAH M. MALTZ
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW, N4420
Washington, DC 20210
maltz.susannah.m@dol.gov
(202) 693-5393

## Certificate as to Parties, Rulings, and Related Cases

Under D.C. Circuit Rule 28(a)(1)(A), the Secretary of Labor certifies as follows:

### 1. Parties and amici

In *Crimson Oak Grove Resources* (No. 24-1294), the following parties appeared before the Federal Mine Safety and Health Review Commission:

- Secretary of Labor
- Crimson Oak Grove Resources, LLC
- River City Stone-Div/Mathy Construction Company
- Holcim (US) Inc.
- Greenbrier Minerals, LLC

In *County Line Stone Company* (No 24-1357), the following parties appeared before the Federal Mine Safety and Health Review Commission:

- Secretary of Labor
- County Line Stone Co., Inc.
- Consol Pennsylvania Coal Company LLC
- Ramaco Resources, LLC

The following are parties in this Court in these consolidated cases:

- Secretary of Labor
- County Line Stone Co., Inc.
- Consol Pennsylvania Coal Company LLC

- Ramaco Resources, LLC

- Crimson Oak Grove Resources, LLC

- River City Stone-Div/Mathy Construction Company

- Holcim (US) Inc.

- Greenbrier Minerals, LLC

- Federal Mine Safety and Health Review Commission[1]

There were no intervenors or amici before the Commission, and there are no

intervenors or amici before this Court.

## 2. Rulings under review

The rulings at issue in this court are the Federal Mine Safety and Health Review

Commission's decisions in *Crimson Oak Grove Resources LLC, et al.*, FMSHRC

Nos. SE 2021-0112, SE 2021-0134, LAKE 2021-0145, YORK 2021-0023, and

WEVA 2021-0294 (FMSHRC Aug. 30, 2024), reported at 46 FMSHRC 593

(2024), and *County Line Stone Co., Inc. et al.*, FMSHRC Nos. YORK 2022-0003,

PENN 2021-0108, and WEVA 2022-0260 (FMSHRC Nov. 1, 2024), reported at 46

FMSHRC 924 (2024).

---

[1] The Commission is named because of the requirements of Fed. R. App. P. 15(a)(2)(A). See *Oil, Chem. & Atomic Workers Int'l Union* v. *OSHRC*, 671 F.2d 643, 651 (D.C. Cir. 1982) (Occupational Safety and Health Review Commission has no authority to participate as a party in proceeding to review its decision).

### 3. Related cases

One case involving substantially the same parties and presenting an identical issue (as well as a separate issue) is pending in this Court. It is *Secretary of Labor* v. *Genesis Alkali, LLC and FMSHRC*, No. 25-1107. It is currently in abeyance pending the disposition of this case.

Another set of consolidated cases involving substantially the same parties and presenting similar issues are pending in this Court. They are *Secretary of Labor* v. *Knight Hawk Coal, LLC and FMSHRC*, No. 24-1293, *Secretary of Labor* v. *Greenbrier Minerals, LLC and FMSHRC*, No. 24-1356, and *Secretary of Labor* v. *Bluestone Oil Corporation and FMSHRC*, No. 25-1107.

# Table of Contents

Certificate as to Parties, Rulings, and Related Cases ................................ i

Table of Contents.......................................................................... iv

Table of Authorities ...................................................................... vi

Glossary ..................................................................................... xi

Jurisdictional Statement.................................................................. 1

Introduction and Statement of the Issues............................................ 2

Statement of the Case ................................................................... 4

    1.    Statutory Framework............................................................ 4

    1.1.  The Commission's and the Secretary's Roles under the Mine Act......... 4

    1.2.  The Secretary's Authority to Vacate Citations and Orders.................... 6

    2.    Factual and Procedural Background ........................................ 10

    2.1.  The ALJ Proceedings ...................................................... 10

    2.2.   The Commission Proceedings ......................................... 19

Summary of Argument .................................................................. 23

Standing.................................................................................... 26

Standard of Review ...................................................................... 27

Argument.................................................................................. 27

    1.    This Court Has Jurisdiction. .................................................. 27

    1.1.  The Orders at Issue in this Case Are Reviewable Under the Collateral
Order Doctrine. .......................................................................... 27

    1.2.  This Case Presents an Article III Case or Controversy. ....................... 33

    2.    The Secretary Has Unreviewable Prosecutorial Discretion to Vacate
Citations and Orders.................................................................... 36

    2.1.  The Mine Act's Split-Enforcement Scheme Precludes Commission
Review of the Secretary's Vacatur Decisions........................................ 36

    2.2.   Section 110(k) Does Not Give the Commission Authority to Review
the Secretary's Vacatur Decisions. ................................................... 42

2.3.    The Secretary's Vacatur Decisions Are Unreviewable, Whether They Occur in a Settlement Context or Not. .........................................................51

3.    Fairness Considerations Support the Secretary's Unreviewable Discretion to Vacate Citations. ............................................................................ 55

4.    Remedy ......................................................................................... 57

Conclusion ........................................................................................ 59

Certificate of Compliance with Type-Volume Limit,  Typeface Requirements, and Type-Style Requirements ...................................................................... a

Certificate of Service ............................................................................ b

Addendum – Pertinent Statutes and Regulations ...................................... c

# Table of Authorities

**Cases**

*Akzo Nobel Salt, Inc.* v. *FMSHRC*,
   212 F.3d 1301 (D.C. Cir. 2000) ............................................................ 37

*Aviation Enters, Inc.* v. *Orr*,
   716 F.2d 1403 (D.C. Cir. 1983) ............................................................ 34

*Baltimore Gas & Elec. Co.* v. *FERC*,
   252 F.3d 456 (D.C. Cir. 2001) ............................................................ 48

*Brennan* v. *OSHRC*,
   502 F.2d 946 (3d Cir. 1974) ............................................................ 35

*Brennan* v. *OSHRC*,
   505 F.2d 869 (10th Cir. 1974) ............................................................ 35

*British Int'l Ins. Co.* v. *Seguros La Republica*,
   354 F.3d 120 (2d Cir. 2003) ............................................................ 34

*Brock* v. *Cathedral Bluffs Shale Oil Co.*,
   796 F.2d 533 (D.C. Cir. 1986) ....................................................... 50, 51

*Cobell* v. *Salazar*,
   No. 11-5270, 2012 WL 1884702 (D.C. Cir. May 22, 2012) ................................. 34

*Cohen* v. *Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ............................................................ 32

*Connecticut Nat. Bank* v. *Germain*,
   503 U.S. 249 (1992) ............................................................ 47

*Coopers & Lybrand* v. *Livesay*,
   437 U.S. 463 (1978) ............................................................ 34

*\*Cuyahoga Valley Railway Company* v. *United Transportation Union*,
   474 U.S. 3 (1985) .......................................... 3, 7, 21, 24, 36, 40, 50, 55

*Donovan v. Allied Indus. Workers of Am.*,
   760 F.2d 783 (7th Cir. 1985) ............................................................ 32

*Authorities on which the Secretary principally relies are marked with an asterisk.

*Donovan* v. *Int'l Union, Allied Indus. Workers of Am. & its Loc. 370*,
722 F.2d 1415 (8th Cir. 1983) ............................................................ 33

*Donovan* v. *Loc. 962, Int'l Chem. Workers Union*,
748 F.2d 1470 (11th Cir. 1984) .......................................................... 33

*Donovan* v. *Oil, Chem., & Atomic Workers Int'l Union & Its Loc. 4-23*,
718 F.2d 1341 (5th Cir. 1983) ............................................................ 32

*Donovan* v. *OSHRC*,
713 F.2d 918 (2d Cir. 1983) ........................................29, 30, 31, 32, 33

*Donovan* v. *United Steelworkers of Am., AFL-CIO*,
722 F.2d 1158 (4th Cir. 1983) ............................................................ 33

*Drake* v. *FAA*,
291 F.3d 59 (D.C. Cir. 2002) ............................................................. 43

*Energy West Mining Co.* v. *FMSHRC*,
40 F.3d 457 (D.C. Cir. 1994) .............................................................. 5

*Greater Boston Television Corp.* v. *FCC*,
444 F.2d 841 (D.C. Cir. 1970) ........................................................... 42

*Gulf Restoration Network* v. *McCarthy*,
783 F.3d 227 (5th Cir. 2015) ............................................................. 47

*\*Heckler* v. *Chaney*,
470 U.S. 821 (1985) ..............................................9, 20, 43, 51, 52, 53

*In re Grand Jury Investigation of Ocean Transp.*,
604 F.2d 672 (D.C. Cir. 1979) ........................................................... 32

*Lone Mountain Processing* v. *Sec'y of Lab.*,
709 F.3d 1161 (D.C. Cir. 2013) ..................................................... 42, 43

*Mach Mining, LLC* v. *Sec'y of Lab.*,
728 F.3d 643 (7th Cir. 2013) ............................................................. 38

*Marshall* v. *Oil, Chem. & Atomic Workers Int'l Union*,
647 F.2d 383 (3d Cir. 1981) ..................................................... 30, 31, 33

*Marshall* v. *OSHRC*,
635 F.2d 544 (6th Cir. 1980) ................................................. 28, 30, 31, 33

*Martin* v. *OSHRC*,
499 U.S. 144 (1991) ................................................................ 4

*\*Meredith* v. *Federal Mine Safety and Health Review Commission*,
177 F.3d 1042 (D.C. Cir. 1999) ....................................... 26, 27, 28, 31

*NY State Dept. of Lab.* v. *F.C.C.*,
984 F.2d 1209 (D.C. Cir. 1993) ............................................... 55

*Oil, Chem. & Atomic Workers Int'l Union* v. *OSHRC*,
671 F.2d 643 (D.C. Cir. 1982) ................................................. ii

*Paulsen* v. *CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) ................................................ 51

*Prairie State Generating Co.* v. *Sec'y of Lab.*,
792 F.3d 82 (D.C. Cir. 2015) .............................................. 27, 38

*Public Citizen, Inc.* v. *FERC*,
7 F.4th 1177 (D.C. Cir. 2021) ............................................... 51

*RAG Cumberland Res., LP* v. *FMSHRC*,
272 F.3d 590 (D.C. Cir. 2001) ............................................... 37

*Se. Fed. Power Customers, Inc.* v. *Harvey*,
400 F.3d 1 (D.C. Cir. 2005) .............................................. 33, 34

*Sec'y of Lab. ex rel. Wamsley* v. *Mutual Mining, Inc.*,
80 F.3d 110 (4th Cir. 1996) ............................................ 5, 38, 50

*Sec'y of Lab.* v. *Excel Mining*,
334 F.3d 1 (D.C. Cir. 2003) ................................................ 37

*Sec'y of Lab.* v. *Industrial TurnAround Corp.*,
138 F.4th 1339 (D.C. Cir. 2025) .......................................... 31, 33

*\*Sec'y of Lab.* v. *Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006) ......... 4, 5, 6, 10, 28, 37, 38, 39, 40, 49, 50, 53, 58, 59

*Sierra Club* v. *Larson*,
882 F.2d 128 (4th Cir. 1989) ............................................... 51

*Sisseton-Wahpeton Oyate of Lake Traverse Rsrv.* v. *United States Corps of Engineers*,
888 F.3d 906 (8th Cir. 2018) ............................................... 51

*Speed Mining, Inc.* v. *FMSHRC*,
　528 F.3d 310 (4th Cir. 2008) ...................................... 5, 38, 39, 43, 50, 51

*Wayte* v. *United States*,
　470 U.S. 598 (1985) ................................................................ 9, 57

*Webster* v. *Doe*,
　486 U.S. 592 (1988) ........................................................................ 43

*Will* v. *Hallock*,
　546 U.S. 345 (2006) ........................................................................ 31

## Statutes

5 U.S.C. 504 ................................................................................................ 59

5 U.S.C. 552 ................................................................................................ 41

29 U.S.C. 655(e) ....................................................................................... 21

29 U.S.C. 666(j) ......................................................................................... 49

*30 U.S.C. 814 ..................................................................... 2, 5, 8, 47, 50, 4

30 U.S.C. 814(a) ................................................................................. 2, 50

30 U.S.C. 814(h) ........................................................................................ 50

30 U.S.C. 815(a) .......................................................................................... 2

30 U.S.C. 816(a)(1) ................................................................................. 28

*30 U.S.C. 817 ...................................................................................... 6, 47

30 U.S.C. 817(a) ...................................................................................... 5, 8

*30 U.S.C. 820(i) ....................................................................... 3, 6, 21, 49

*30 U.S.C. 820(k) .................................................... 3, 6, 11, 19, 46, 60

30 U.S.C. 823(d) ......................................................................................... 1

## Regulations

29 C.F.R. 2700.31(b) ............................................................................. 20

29 C.F.R. 2700.76 ....................................................................................... 1

29 C.F.R. 2700.31 ..................................................................................... 47

29 C.F.R. 2702.7(a) ................................................................ 41

30 C.F.R. 100.6 ...................................................................... 58

**Federal Mine Safety and Health Review Commission Decisions**

*American Aggregates of Mich.*, Inc.,
    42 FMSHRC 570 (Aug 2020) ............................................... 58

*American Mine Svcs., Inc.*,
    15 FMSHRC 1830 (Sept. 1993) .......................................... 60

*Bixler Mining Co.*,
    16 FMSHRC 1427 (July 1994) ............................................ 40

*Black Beauty Coal Co.*,
    34 FMSHRC 1856 (Aug. 2012) ...................................... 39, 44

*Knox County Stone Co.*,
    3 FMSHRC 2478 (Nov. 1981) ............................................. 20

*\*Mechanicsville Concrete, Inc.*,
    18 FMSHRC 877 (June 1996) .............................................. 40

*N. Am. Drillers, LLC*,
    34 FMSHRC 352 (Feb. 2012) ....................................... 39, 54

*\*RBK Constr., Inc.*,
    15 FMSHRC 2099 (1993) ..................................... 3, 8, 21, 45

*Am. Coal Co.*,
    40 FMSHRC 330 (Mar. 2018) ............................................. 39

*Youghiogheny & Ohio Coal Co.*,
    7 FMSHRC 200 (Feb. 1985) ................................................. 7

**Other Authorities**

*Admin. Law & Practice* (3d ed.) ............................................ 57

Charles H. Koch, Jr. & Richard Murphy, *Admin. Law & Practice* (3d ed.) ............... 4

S. Rep. 95-181 (1977) .......................................... 19, 20, 41, 48

# Glossary

| | |
|---|---|
| ALJ | Administrative Law Judge |
| Commission or FMSHRC | Federal Mine Safety and Health Review Commission |
| *County Line Stone* docket | The cases comprising Docket No. 24-1357:<br>• *County Line Stone Co.,* FMSHRC No. YORK 2022-0003;<br>• *Consol PA Coal Co., LLC,* FMSHRC No. PENN 2021-0108; and<br>• *Ramaco Resources, LLC*, FMSHRC No. WEVA 2022-0260. |
| *Crimson Oak Grove* docket | The cases comprising Docket No. 24-1294:<br>• *Crimson Oak Grove Res., LLC*, FMSHRC No. SE 2021-0112;<br>• *Crimson Oak Grove Res., LLC*, FMSHRC No. SE 2021-0134;<br>• *Greenbrier Materials*, FMSHRC No. WEVA 2021-0294;<br>• *Holcim (US) Inc.*, FMSHRC No. YORK 2021-0023; and<br>• *River City Stone-Div/Mathy Construction Co.*, FMSHRC No. LAKE 2021-0145. |
| JA | Citations to the Joint Appendix |
| Mine Act | Federal Mine Safety and Health Act of 1977 |
| MSHA | Mine Safety and Health Administration |
| OSH Act | Occupational Safety and Health Act of 1970 |
| OSHA | Occupational Safety and Health Administration |
| OSHRC | Occupational Safety and Health Review Commission |

## Jurisdictional Statement

The Federal Mine Safety and Health Review Commission ("Commission") had jurisdiction over these cases because the mine operators timely contested the citations they received from the Mine Safety and Health Administration ("MSHA"). 30 U.S.C. 815(d), 823(d). A Commission administrative law judge ("ALJ") denied the Secretary's motions to settle the proceedings. The Secretary timely petitioned for interlocutory review, which the Commission granted. See 29 C.F.R. 2700.76 (governing interlocutory review at the Commission).

In *Crimson Oak Grove*, the Commission issued its decisions affirming the ALJ's denial of settlement approval on August 30, 2024, and in *County Line Stone Company* on November 1, 2024. The Secretary filed a petition for review with this court on September 10, 2024 and November 15, 2024, respectively.

The Secretary recognizes that the Commission's orders remand the cases back to the ALJ for further proceedings, but under the collateral order exception, this Court has jurisdiction to decide this matter. The Court has directed the Secretary to address whether the orders at issue are immediately reviewable, see Per Curiam Ord., Nos. 24-1294, 24-1357 (Mar. 24, 2025); the Secretary has done so in detail in the Argument section, pp. 27-33 *infra*. In short, they are collateral orders that are immediately reviewable.

The Court has also directed the Secretary to address whether an Article III case or controversy exists. See Per Curiam Ord., Nos. 24-1294, 24-1357 (Mar. 24, 2025). The Secretary has done so in detail in the Argument section, pp. 33-35, *infra*. In short, there is an Article III case or controversy; the parties are adverse, and having reached a proposed settlement subject to Commission approval does not nullify that adversity.

The orders in this case are immediately reviewable and the case presents a justiciable controversy. Thus, the Court has jurisdiction to decide this matter.

## Introduction and Statement of the Issues

The Federal Mine Safety and Health Act of 1977 ("Mine Act") establishes a split enforcement scheme: the Secretary of Labor has the exclusive authority to enforce the Mine Act, and the Federal Mine Safety and Health Review Commission adjudicates certain disputes arising under it.

If, during an inspection of a mine, the Secretary determines that a mine operator has violated a mandatory safety and health standard, she issues a citation to the operator. 30 U.S.C. 814(a). In issuing a citation, the Secretary charges the operator with a violation of the Mine Act or the mandatory safety and health standards promulgated under the Mine Act. The mine operator may contest the citation before the Commission. 30 U.S.C. 815(a).

This case concerns the Secretary's discretion to vacate a citation—a prosecutorial decision to drop a charge—after an operator has contested it before the Commission. In keeping with the Supreme Court's decision in *Cuyahoga Valley Railway Company* v. *United Transportation Union*, 474 U.S. 3 (1985) (per curiam), the Commission has previously held that the Secretary has unreviewable discretion to vacate citations. *RBK Constr., Inc.*, 15 FMSHRC 2099 (1993). But in this case, the Commission concluded that, although the Secretary's decision to vacate a contested citation is an exercise of enforcement discretion, it nevertheless has authority to review that decision. It reasoned that section 110(k) of the Mine Act, 30 U.S.C. 820(k), which concerns settlements of civil penalties, shows an intent to circumscribe the Secretary's discretion to vacate a contested citation. It also reasoned that its own procedural rules, section 110(i) of the Mine Act, 30 U.S.C. 820(i), and the Mine Act's legislative history provide a meaningful standard to review the Secretary's decision to vacate.

The Commission's orders at issue in this case are non-final, and the case arises from the parties' attempt to settle and resolve the underlying citations; for these reasons, the Court has ordered the Secretary to address whether it has jurisdiction to review the Commission orders.

The issues raised are:

1. Does this Court have jurisdiction to decide this case?

2. Did the Commission err by concluding that it has authority to review the Secretary's discretionary, prosecutorial decision to vacate a contested citation?

## Statement of the Case

## 1. Statutory Framework

### 1.1. The Commission's and the Secretary's Roles under the Mine Act.

The Mine Act establishes a split-enforcement scheme under which the Secretary and the Commission perform distinct roles. The Secretary exercises rulemaking, policymaking, and enforcement powers, while the Commission, an agency independent from the Department of Labor, exercises "nonpolicymaking adjudicatory powers typically exercised by a *court* in the agency-review context." *Sec'y of Lab.* v. *Twentymile Coal Co.*, 456 F.3d 151, 161 (D.C. Cir. 2006) (quoting *Martin* v. *OSHRC*, 499 U.S. 144, 154 (1991)). Under split-enforcement schemes, "[t]he adjudicating agency must take care not to arrogate power by attempting to modify the policy developed by the policymaking agency." 2 Charles H. Koch, Jr. & Richard Murphy, *Admin. Law & Practice* § 5:29 (3d ed.). Nearly two decades ago, in *Twentymile Coal,* this Court reversed a Commission decision that restricted the Secretary's authority to charge a production operator for a violation committed by an independent contractor. 456 F.3d at 154. In reversing the Commission, this

Court concluded that the Secretary's charging decisions are generally unreviewable and observed that "the Secretary's charging discretion [under the Mine Act] is as uncabined as that of a United States Attorney under the Criminal Code." Id. at 157, 161.

The courts of appeals have consistently held that the Commission has no enforcement or policymaking role. *Twentymile*, 456 F.3d at 160-161; *Energy West Mining Co.* v. *FMSHRC,* 40 F.3d 457, 463 (D.C. Cir. 1994); *Speed Mining, Inc.* v. *FMSHRC*, 528 F.3d 310, 319 (4th Cir. 2008); *Sec'y of Lab. ex rel. Wamsley* v. *Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996). The Commission plays an important role adjudicating disputes, but ultimately, "enforcement of the Act is the sole responsibility of the Secretary." *Twentymile*, 456 F.3d at 161 (quoting *Martin*, 499 U.S. at 151-152).

Under section 104 of the Mine Act, if the Secretary believes a mine operator has violated the Act or any accompanying mandatory health or safety standards, the Secretary "shall. . . issue a citation to the operator." 30 U.S.C. 814(a). The authority to issue a citation is the Secretary's alone. 30 U.S.C. 814; *Twentymile*, 456 F.3d at 161. Under section 107 of the Mine Act, if the Secretary determines that an imminent danger exists, she has the authority to issue an order requiring that miners be withdrawn from the area affected by the imminent danger. 30 U.S.C.

817(a); *Twentymile*, 456 F.3d at 161. The authority to issue an imminent danger order is the Secretary's alone. See 30 U.S.C. 817.

The settlement and penalty provisions of the Mine Act are not located in sections 104 or 107, they are located in section 110. 30 U.S.C. 820. Under section 110(k) of the Mine Act, the Commission and its ALJs have the authority to review settlements of *penalties*. 30 U.S.C. 820(k) ("No proposed *penalty* which has been contested. . . shall be compromised, mitigated or settled except with the approval of the Commission.") (emphasis added). Section 110(i) of the Mine Act specifies the factors that the Commission must consider in assessing a penalty: "the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation. . . ." 30 U.S.C. 820(i).

### 1.2. The Secretary's Authority to Vacate Citations and Orders

At one time, the Commission required the Secretary to provide "adequate reasons" for a vacatur decision and would not "automatically grant motions to vacate citations that have been contested and thereby placed before the Commission for decision." *Youghiogheny & Ohio Coal Co.*, 7 FMSHRC 200, 203

(Feb. 1985). But, shortly after the Commission made that determination, the Supreme Court decided *Cuyahoga Valley Railway Co.* v. *United Transp. Union*, 474 U.S. 3 (1985) (per curiam).

In *Cuyahoga Valley*, the Supreme Court held that the Secretary of Labor had unreviewable discretion to withdraw a citation under the Occupational Safety and Health Act ("OSH Act"). *Cuyahoga Valley*, 474 U.S. at 7-8. The Secretary cited Cuyahoga Valley Railway Company for violating the Act but withdrew the citation after discovering the Federal Railway Administration had jurisdiction over the relevant safety conditions. *Id.* at 4–5. The ALJ granted the Secretary's motion to vacate, but the Occupational Safety and Health Review Commission ("OSHRC") directed review of the ALJ's order, and remanded the case. *Id.* at 4. The Sixth Circuit affirmed the OSHRC's holding that it could review the Secretary's decision to withdraw a citation, reasoning that because a complaint and an answer had been filed, the OSHRC "had control of the case . . . ." *Id.* at 5. But the Supreme Court reversed, holding that the authority to withdraw a citation is a "necessary adjunct" of the Secretary's exclusive authority to determine whether to issue a citation. *Id.* at 5-6. "The Commission's function is to act as a neutral arbiter and determine whether the Secretary's citations should be enforced . . . Its authority plainly does

not extend to overturning the Secretary's decision not to issue or to withdraw a citation." *Id.* at 7.

After *Cuyahoga Valley*, the Secretary asserted his unreviewable discretion to vacate citations and orders in the Mine Act context. In *RBK Construction*, the Secretary vacated multiple contested citations after determining that MSHA did not have jurisdiction over the construction company. 15 FMSHRC 2099, 2099 (Oct. 1993). The Secretary explained to the ALJ that "there simply is no penalty to be considered and there is nothing further for the Commission to decide," but the ALJ rejected this argument. *Id.* at 2100. On interlocutory review, the Secretary argued that the Secretary has exclusive enforcement authority pursuant to section 104 of the Mine Act (which confers on the Secretary the authority to issue citations for violations of the Act and its accompanying standards, *inter alia*), 30 U.S.C. 814, and section 107 of the Mine Act (which confers on the Secretary the power to issue orders requiring the withdrawal of miners if an imminent danger exists, *inter alia*), 30 U.S.C. 817(a), and thus, the Secretary is authorized to vacate citations and orders. *Id.* at 2100. The Secretary further argued that *Cuyahoga Valley* is "virtually identical" to *RBK*, and therefore the Secretary's decision to vacate citations and orders is not reviewable by the Commission. *Id.* at 2100-2101. Finally, the Secretary argued that section 110(k), which provides that "[n]o proposed penalty which has

been contested. . . shall be compromised, mitigated, or settled except with the approval of the Commission," applies only to settlements of penalties, not to vacaturs of citations or orders. The Commission concurred: "We agree with the Secretary that he has the authority to vacate the citations in issue, and, therefore, we grant the motions to dismiss." *Id.* at 2101. And, leaving no room for doubt or exceptions, the Commission expressly overruled *Youghiogheny & Ohio Coal Company*. *Id.* at 2101.

Discretionary enforcement decisions like the Secretary's vacatur decisions are unreviewable because they are "particularly ill-suited" to judicial review. See *Wayte* v. *United States*, 470 U.S. 598, 607 (1985). Such enforcement decisions rest on a "complicated balancing of a number of factors" which are specifically within the Secretary's expertise: "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985). The Secretary is far better equipped to handle these decisions than is the Commission. *Id.* at 832. Indeed, this Court applied this principle in the Mine Act context twenty years ago when it reversed a Commission decision that purported to limit the Secretary's charging decisions

about whether to cite a production operator for a violation committed by an independent contractor. *Twentymile*, 456 F.3d at 157.

## 2. Factual and Procedural Background

### 2.1. The ALJ Proceedings

These consolidated cases involve eight ALJ decisions denying (or otherwise refusing to grant) settlement approval.

In the *Crimson Oak Grove* docket:

***Greenbrier Materials*** **(FMSHRC No. WEVA 2021-0294).** Greenbrier operates an underground coal mine in West Virginia. During a regularly scheduled inspection,[2] MSHA cited the operator for alleged violations including ineffectively insulated energized cables, failing to maintain the communication system, and problems with escapeways, among other things. JA 57-68. The case involves six contested citations. JA 61-67. In August 2021, the Secretary filed a motion with the presiding ALJ to approve settlement. JA 69. The motion stated that the operator had agreed to accept four citations as written and, citing *RBK*, stated that the Secretary had exercised prosecutorial discretion to vacate two citations. JA 69-71.

---

[2] The Mine Act requires MSHA to inspect underground mines at least four times each year and surface mines at least two times each year. 30 U.S.C. 813(a).

The ALJ's clerk emailed the parties. JA 74. The email explained that the ALJ was denying the motion:

> This settlement is being denied because the vacated citations submitted as part of the settlement motion have not been explained.

> The Judge's position is that *RBK Construction* and *Cuyahoga Valley* do not apply to settlements. There was no requirement at issue in *Cuyahoga Valley* that OSHRC approve settlements of penalties, and there was no settlement at issue in *RBK Construction*.

> The Secretary can explain that these vacations are pure exercises of prosecutorial discretion by certifying that there has been no agreement involving an exchange of the vacations for accepting the other violations as written, or alternatively, by explaining that the citations were wrongly issued or how facts reveal that they should not have been issued and should be dismissed.

> As submitted, the parties have presented no evidence on which the Judge is able to approve the settlement. This case appears to involve a quid pro quo, which requires Commission approval.

*Ibid.* The ALJ issued an order denying the motion to approve settlement. JA 75. In it, the ALJ reasoned that *RBK* did not apply to this case, because *RBK* "dealt with the dismissal of matters in their entirety." JA 75. The ALJ also reasoned that *Cuyahoga Valley* did not apply because it concerned the OSH Act, and unlike the OSH Act, the Mine Act requires the Commission "to approve any compromise, mitigation or settlement of any penalty that has been contested before the Commission." JA 76 (citing 30 U.S.C. 820(k)). The ALJ acknowledged that *Cuyahoga Valley* "notes the danger of giving both prosecutorial and adjudicatory

functions to the Commission," but reasoned that this was in the context of the OSH Act. *Ibid.*

The ALJ reasoned that because these citations were contested before the Commission, section 110(k) gave him authority to review any settlement. JA 76-77. According to the ALJ, the "context" of this case—the fact that the motion was called a motion to approve settlement, and that the motion involved both vacaturs and citations accepted as written—made it seem like "a *quid pro quo*." JA 77. The ALJ "recognize[d] the Secretary's prosecutorial discretion as a general matter," and stated that he would review the motion in two ways: the parties could "certify that the decision to vacate citations as provided in the Motion is coincidental and not contingent upon the resolution of the remaining violations as provided in the agreement" or explain the reasons for the Secretary's vacatur decision. *Ibid.* The ALJ rejected the settlement "pending further submission of the parties." *Ibid.*

*Holcim (US) Inc.* **(FMSHRC No. YORK 2021-0023).** Holcim operates a cement plant in Maryland. During a routine inspection, MSHA cited Holcim for alleged violations including problems with electric power control switches and storage of combustible materials too close to a power source, among other things. JA 1-36. *Holcim* involves 13 citations. JA 12-36. In August 2021, the Secretary filed a motion to approve settlement. JA 37. The motion stated that the operator had

agreed to accept five citations as written; explained facts supporting the Secretary's decision to reduce the penalty on three citations and the negligence on one; and, citing *RBK*, stated that the Secretary had exercised his prosecutorial discretion to vacate four citations. JA 37-41.

This case followed the same path as *Greenbrier*. See JA 43 (ALJ's email correspondence with parties); JA 45 (ALJ's order denying the motion to approve settlement). The ALJ denied the motion for the same reasons. JA 45-47.

**Crimson Oak Grove Resources, LLC (FMSHRC No. SE 2021-0112).** Crimson Oak Grove operates an underground coal mine in Alabama. During a routine inspection, MSHA cited Crimson for alleged ventilation system issues and malfunctioning atmospheric monitoring systems. JA 89-106. This case involves two citations and one order. JA 100-106. In September 2021, the Secretary filed a motion to dismiss. JA 107. The motion stated that the operator had decided to withdraw its contest to one citation and the order and, citing *RBK*, stated that the Secretary had exercised his prosecutorial discretion to vacate the remaining citation. JA 107-108.

This case followed largely the same path as *Greenbrier* and *Holcim*. See JA 110 (ALJ's order denying the motion to dismiss). The only substantive difference is that the ALJ's order denying the motion noted that, although "the proposal to vacate

the citations is made in a 'motion to dismiss civil penalty proceeding,' the disposition has the appearance of a settlement." JA 112.

***Crimson Oak Grove Resources, LLC*** **(FMSHRC No. SE 2021-0134).** At the same underground coal mine in Alabama, MSHA cited Crimson with alleged violations including failure to deenergize equipment and failure to adequately insulate power cables, among other things. JA 123-151. This case involves five citations. JA 133, 139-144. In September 2021, the Secretary filed a motion to approve settlement. JA 152. The motion stated that one citation was unchanged; explained facts supporting the Secretary's decision to reduce the negligence associated with three citations; and, citing *RBK*, stated that the Secretary had exercised prosecutorial discretion to vacate the remaining citation. JA 152-154. This case followed the same path as *Greenbrier* and *Holcim*. See JA 159 (ALJ's order denying motion to approve settlement).

***River City Stone-Div/Mathy Construction Co.***, **(FMSHRC No. LAKE 2021-0145).** Mathy operates a surface limestone mine in Wisconsin. During a routine inspection, MSHA cited Mathy for allegedly failing to address flammable, slick oil leaking from a generator and failing to adequately test an electric grounding system. JA 171-185. This case involves two citations. JA 178-182. In October 2021, the Secretary filed a motion to dismiss. JA 186. The motion stated that the operator had

14

decided to withdraw its contest to one citation and the order and, citing *RBK*, stated that the Secretary had exercised prosecutorial discretion to vacate the remaining citation. JA 186-187. This case followed the same path as *Crimson Oak Grove*, (FMSHRC No. SE 2021-0112). See JA 189, 191 (ALJ's order denying motion to dismiss; stating that "the disposition has the appearance of a settlement.")

In each of these cases, the Secretary filed, and the ALJ granted, a motion to certify for interlocutory review this question: "Whether the Secretary has unreviewable discretion to vacate a contested citation without the Commission's approval." JA 80 (the Secretary's motion for certification in *Greenbrier*); JA 85 (the ALJ's order in *Greenbrier*); JA 50 (the Secretary's motion in *Holcim*); JA 55 (the ALJ's order in *Holcim*); JA 116 (the Secretary's motion in *Crimson*, SE 2021-0112); JA 121 (the ALJ's order in *Crimson*, SE 2021-0112); JA 164 (the Secretary's motion in *Crimson*, SE 2021-0134); JA 169 (the ALJ's order in *Crimson*, SE 2021-0134); JA 195 (the Secretary's motion in *River City Stone-Div/Mathy*); JA 200 (the ALJ's order in *River City Stone-Div/Mathy*).

In March 2022, the Commission granted interlocutory review, JA 202, but on a slightly different question: "whether Section 110(k) of the Mine Act authorizes

review of the Secretary's decision to vacate a citation in the context of a settlement, when the vacatur is contingent upon the resolution of other citations." JA 203.

In the *County Line Stone* docket:

***County Line Stone Co Inc.*, (FMSHRC No. YORK 2022-0003).** County Line Stone operates a surface limestone mine in New York. During a routine inspection, MSHA cited County Line Stone for allegedly failing to warn miners of loose rock underfoot and failing to barricade a 26-foot vertical drop, among other things. JA 398-416. This case involves five citations. JA 403-411. In January 2022, the Secretary filed with the ALJ a motion to approve settlement, explaining that the parties had resolved the case. JA 417-420. The Secretary vacated two citations and declined to provide an explanation for the vacaturs. JA 419. The ALJ did not rule on the motion to approve settlement, instead staying the case pending Commission review of the identical vacatur question in the *Crimson Oak Grove* dockets. JA 422-423.

During the pendency of the stay, the Secretary filed a motion to certify the case for interlocutory review; the ALJ did not grant it. JA 424, 428. The ALJ agreed that the case presented a controlling question of law but reasoned that certification would not materially advance the final disposition of the case because the Commission might quickly decide *Crimson Oak Grove* cases, so certifying for interlocutory review would not speed up the case's disposition. JA 429.

***Consol PA Coal Co. LLC,*** **(FMSHRC No. PENN 2021-0108).** Consol operates an underground coal mine in Pennsylvania. During a routine inspection, MSHA cited Consol with alleged violations including failure to maintain electric systems and equipment in safe operating condition, among other things. JA 60-78. This case involves seven citations, JA 457-475, and followed the same path as *County Line Stone*. In March 2022, the Secretary filed with the ALJ a motion to approve settlement. JA 476. The Secretary vacated two citations without providing an explanation for the vacaturs. JA 478-480. The ALJ did not rule on the motion to approve settlement and stayed the case pending the outcome of *Crimson Oak Grove*. JA 485. When the Secretary filed a motion to certify the case for interlocutory review, JA 487, the ALJ did not grant it for the same reasons he espoused in *County Line Stone.* JA 487-491.

***Ramaco Resources, LLC***, **(FMSHRC No. WEVA 2022-0260).** Ramaco operates an underground coal mine in West Virginia. During a routine inspection, MSHA cited Ramaco for allegedly failing to properly insulate energized cables and failing to follow the ventilation plan in place at the mine, among other things. JA 505-523. This case involves seven citations. JA 508-522. The Secretary filed a motion to approve settlement; the Secretary vacated one citation and declined to

provide an explanation for the vacaturs. JA 524, 528. The ALJ did not rule on the motion to approve settlement.

When the Secretary requested a stay of the case, JA 534, the ALJ denied it because he expected the Commission to quickly issue a decision in the *Crimson Oak Grove* consolidated cases that were then already on interlocutory review. JA 539-541. The Secretary filed a motion to certify for interlocutory review, JA 542; the ALJ denied it for the same reasons he did so in *County Line Stone* and *Consol Pennsylvania*. JA 546-547.

The Secretary filed with the ALJ a renewed motion to approve settlement or certify for interlocutory review in each of these three cases, JA 445 (*County Line Stone*), JA 493 (*Consol*), JA 574 (*Ramaco*); the ALJ denied these motions. JA 448 (*County Line Stone*), JA 496 (*Consol*), JA 577 (*Ramaco*). The Secretary then filed a petition for interlocutory review with the Commission.[3] JA 619. The Commission granted review, framing the question for review the same way that it did in the *Crimson Oak Grove* docket: "whether Section 110(k) of the Mine Act authorizes

---

[3] Under the Commission's procedural rules, the Commission has discretionary authority to grant interlocutory review where the ALJ certifies that an interlocutory ruling involves a controlling question of law and immediate review will materially advance the final disposition of the proceeding, or the ALJ denies a motion for certification, and the party files a petition for interlocutory review with the Commission. 29 C.F.R. 2700.76.

review of the Secretary's decision to vacate a citation in the context of a settlement, when the vacatur is contingent upon the resolution of other citations." JA 653, 655.

## 2.2. The Commission Proceedings

On August 30, 2024, the Commission issued a decision in the *Crimson Oak Grove* cases concluding that the Secretary does not have unreviewable discretion to vacate a citation or order without the Commission's approval and that parties to a proposed settlement must "provide sufficient facts to support the vacatur of a citation or order in a settlement proceeding." JA 356.

The Commission relied on section 110(k) of the Mine Act, which provides that proposed penalties that are contested before the Commission cannot "be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. 820(k). The Commission determined that section 110(k) requires it to review the vacaturs of citations "when done in the context of a settlement." JA 352.

The Commission cited the legislative history of section 110(k) in support of its interpretation. JA 356-357. The Commission explained that in enacting the Mine Act, Congress sought to rectify the shortcomings of the prior regulatory regime; under the predecessor statute, where penalty reductions were not sufficiently transparent and settlement efforts were "not on the record" and "did not need to be approved by [an] Administrative Law Judge." JA 357 (quoting S. Rep. 95-181, at

44 (1977)). Accordingly, the Commission concluded, Congress intended section 110(k) to introduce more scrutiny of penalty assessments. JA 357. According to the Senate Report, "the purpose of civil penalties. . . is best served when the process by which these penalties are assessed and collected is carried out in public. . . ." JA 357 (quoting S. Rep. 95-181, at 45 (1977)). In service of this aim, the Commission held that section 110(k) "directs the Commission and its judges to protect the public interest by ensuring that all settlements of contested penalties are consistent with the Mine Act's objectives." JA 357 (quoting *Knox County Stone Co.*, 3 FMSHRC 2478, 2479 (Nov. 1981)). And the Commission's procedural rules require that a motion to approve settlement of penalties include facts in support of the penalty agreed to by the parties. JA 357 (citing 29 C.F.R. 2700.31(b)). Thus, the Commission concluded that the legislative history's focus on transparency, along with its precedent and procedural rules, gives it the authority to review the vacaturs of penalties. JA 357.

The Commission further suggested that section 110(k) creates an exception to the unreviewability of agency enforcement discretion in the settlement context, citing *Chaney*, 470 U.S. at 834 (the presumption of unreviewability is overcome where a statute indicates Congress intended "to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that

discretion. . . .") JA 357-358. The Commission determined that section 110(k) circumscribes the Secretary's enforcement discretion, because it curtails the Secretary's prosecutorial discretion to settle a case, and that the Act provides meaningful standards for defining the limits of the discretion in section 110(i). JA 358. Section 110(i) sets out six factors for ALJs to consider in assessing penalties. 30 U.S.C. 820(i).

Before the Commission, the Secretary argued that under *Cuyahoga Valley*, she has unreviewable discretion to vacate a citation. JA 218-219. The Commission disagreed, explaining that *Cuyahoga Valley* is an OSH Act case, and that the OSH Act does not have a provision like section 110(k) that authorizes the analogous OSHRC to review proposed penalties (instead, the OSH Act requires settlements be published in the Federal Register, 29 U.S.C. 655(e)). JA 359.

The Secretary also relied on *RBK*, 15 FMSHRC 2099. JA 221-222. In *RBK,* the Commission, citing *Cuyahoga Valley*, agreed that the Secretary "has the authority to vacate the citations." 15 FMSHRC at 2101. In the orders currently on appeal before this Court, the Commission distinguished *RBK*, reasoning that *RBK* was in the context of a voluntary dismissal rather than a settlement. JA 359-360, 723. The Commission concluded that the Secretary normally has unreviewable discretion not to enforce, but because of section 110(k)'s penalty-review provision, the settlement

context is an exception. JA 359-360. The Commission also noted that in *Cuyahoga Valley* and *RBK*, the Secretary provided an explanation for the vacaturs, and declined to do so in the present case. JA 360.

The Secretary also argued that the elimination of the penalty is merely an ancillary effect of the enforcement decision to vacate, not a penalty compromise that the Commission can review under section 110(k). JA 221-222. The Commission rejected this, asserting that the elimination of the penalty is still part of a mutually beneficial deal between the parties. JA 360-361. The Commission also suggested that the language of 110(k), which refers to the "compromise[], mitigat[ion], or settle[ment]" of penalties gives the Commission the authority to review "arrangements between the Secretary and the operator that, by themselves, may not directly affect a civil penalty but are integral to the settlement package." JA 361.

The Commission concluded that the Secretary cannot vacate a contested citation without Commission approval under section 110(k) of the Act, and that parties must provide "sufficient factual support" to justify vacaturs. JA 362. The Commission affirmed the ALJ's denial of the settlement motions and remanded the cases. JA 362.

On November 1, 2024, Commission issued a very similar decision in the *County Line Stone* docket.[4] JA 719. Relying on its decision in *Crimson Oak Grove*, the Commission again determined that the Secretary cannot vacate contested citations without Commission review, pursuant to section 110(k), section 110(i), the legislative history of the Mine Act, and the Commission's procedural rule requiring settlement motions to include facts in support of the agreed-upon penalty. JA 722-724. The Commission affirmed the ALJ's denial of the settlement motions and remanded the cases. JA 725.

## Summary of Argument

The Secretary's discretionary enforcement decision to vacate a citation post-contest is unreviewable, and the Court should therefore vacate the Commission's orders.

As a threshold matter, this Court has jurisdiction to decide this case. The Commission orders affirming the ALJs' denial of motions to approve settlement, while not final orders, are reviewable under the collateral order doctrine. They conclusively determine the sole question in dispute before this

---

[4] The Secretary petitioned this Court for review of *Crimson Oak Grove* on September 10, 2024. On October 22, 2024, the Secretary filed an unopposed motion with the Commission to hold the *County Line Stone* docket in abeyance pending the disposition of *Crimson Oak Grove*. In its decision in *County Line Stone*, the Commission denied this motion in a footnote, without explaining its reasoning. JA 720.

Court: whether the Secretary has unreviewable discretion to vacate a contested citation. This question is separate from the merits of the proposed settlement of the citations and is vitally important, as it concerns the Secretary's prosecutorial authority to enforce the Mine Act. Additionally, the orders are effectively unreviewable on appeal, because the parties cannot get review of the orders at any later point in the litigation (regardless of the outcome of the settlement motions on remand).

This case also presents an Article III case or controversy. The parties and their legal interests are adverse. The Secretary has issued citations to the mine operators and proposed penalties for alleged violations, and the operators have contested these. Neither an unapproved settlement agreement nor an operator's nonparticipation in a case dissolves the controversy.

On the merits, Supreme Court case law, Commission precedent, and the language and structure of the Mine Act establish that the Secretary has unreviewable prosecutorial discretion to vacate contested citations and orders.

The Supreme Court has affirmed this in a near-identical context in *Cuyahoga Valley Railway Company* v. *United Transportation Union*, 474 U.S. 3 (1985) (per curiam) (in the context of citations issued under the OSH Act). In *Cuyahoga Valley*, the Supreme Court determined that the Secretary has sole authority to issue a

citation or order alleging a violation of the OSH Act or accompanying standards that she is tasked with enforcing. Under *Cuyahoga Valley*, the power to issue a citation necessarily includes the power to withdraw it. The decision to vacate a citation is the Secretary's alone, and the Commission cannot review it. To do so would be an impermissible encroachment on the Secretary's enforcement authority. The Commission is a neutral adjudicator of disputes, and it cannot step outside of its statutorily prescribed role.

Moreover, in the cases before the Court, the Commission has departed from its thirty-two-year-old precedent without a reasoned explanation. The Commission's orders interpreting section 110(k) of the Mine Act to give it the power to review vacaturs are wrong. Section 110(k) gives the Commission authority to review "any compromise, mitigation or settlement" of contested *penalties*. A vacatur is not a penalty compromise; a decision to enforce (or not) is not a decision to adjust a penalty. Vacating a citation or order entails withdrawing everything about that citation or order; that a vacatur eliminates an associated penalty is merely incidental to the Secretary's underlying authority, as the prosecutor, to cease prosecuting any particular citation.

The Commission's reliance on other authorities—section 110(i), the statute's legislative history, and its own procedural rules—is misplaced. Section 110(i) does

not address vacatur, only the factors a Commission is required to consider when assessing a penalty after an evidentiary hearing. The legislative history addresses Congress's concern about transparency under the pre-Mine Act enforcement regime. And the Commission's procedural rules cannot override a clear statutory provision.

In its attempt to cabin the Secretary's discretionary prosecutorial authority, the Commission ignores Supreme Court precedent, the statute's split-enforcement scheme, and basic principles of agency discretion. The Commission once understood *Cuyahoga Valley*'s applicability to the Mine Act perfectly, but now contorts itself to avoid reaching the conclusion that has been Supreme Court law for forty years, and Commission law for over thirty years: the Secretary's discretionary enforcement decision to vacate citations and orders is unreviewable.

## Standing

An Article III case or controversy exists involving the contested citations, and the Secretary has standing to seek review under the collateral order doctrine. See *Meredith* v. *FMSHRC*, 177 F.3d 1042 (D.C. Cir. 1999) (reviewing a non-final Commission order that remanded the matter to an ALJ, because "under the

collateral order doctrine, the petition for review [was] properly before [the Court].")[5]

## Standard of Review

This Court reviews questions of law and the legal determinations of the Commission de novo. *Prairie State Generating Co.* v. *Sec'y of Lab.*, 792 F.3d 82, 89 (D.C. Cir. 2015) The questions at issue here—whether the Court has jurisdiction to review this case, and whether the Secretary has the discretionary authority to vacate contested citations—are questions of law.

## Argument

### 1. This Court Has Jurisdiction.

#### 1.1. The Orders at Issue in this Case Are Reviewable Under the Collateral Order Doctrine.

This Court has jurisdiction to review Commission orders that fall within the collateral order exception to the general rule requiring finality. *Meredith* v. *FMSHRC*, 177 F.3d 1042, 1048, 1050 (D.C. Cir. 1999). A non-final agency order is reviewable as a collateral order if it "(i) conclusively determines a disputed question; (ii) resolves an important issue completely separate from the merits of

---

[5] The Mine Act authorizes the Secretary to obtain this Court's review "of any final order of the Commission[.]" 30 U.S.C. 816(b). The Commission orders before the Court are not final orders.

the action; and (iii) is effectively unreviewable on appeal from a final judgment." *Id.* at 1048. The Commission orders before the Court satisfy that three-part test.

First, these Commission orders conclusively determine the disputed question of whether the Secretary has unreviewable discretion to vacate a contested citation. The orders are the Commission's final disposition of that issue and may not be revised: the administrative records have been filed in this Court, which gives this Court "exclusive jurisdiction of the proceeding and of the questions determined therein[.]" 30 U.S.C. 816(a)(1). The Commission has also issued remand orders, indicating that its own review of the issue is concluded.

The Sixth Circuit has held, in the analogous context of the OSH Act,[6] that an OSHRC order, remanding a matter to an OSHRC ALJ to allow employees to prosecute a citation that the Secretary had vacated was a collateral order and thus immediately reviewable "with respect to the rights of the Secretary as prosecutor[.]" *Marshall* v. *OSHRC*, 635 F.2d 544, 549 (6th Cir. 1980). The Second Circuit, too, has held that an OSHRC order remanding to an OSHRC ALJ to determine whether to approve a settlement "conclusively determine[d] that the

---

[6] The OSH Act comparison is significant because the Mine Act "[r]eplicat[es] the division of responsibilities between the Secretary of Labor and the Occupational Safety and Health Review Commission[.]" *Meredith*, 177 F.3d at 1054; see also *Sec'y of Lab.* v. *Twentymile Coal Co.*, 456 F.3d 151, 160-161 (D.C. Cir. 2006) (discussing these analogous "split enforcement" schemes).

Secretary does not have the unfettered right to reach a settlement without Commission approval or employee involvement[.]" *Donovan* v. *OSHRC*, 713 F.2d 918, 924 (2d Cir. 1983).

Second, the Commission orders resolve an important issue separate from the merits. They are separate from the merits because the question of whether the Commission has authority to review the Secretary's vacatur decision is distinct from whether the Secretary has satisfied the Commission's standard for approving a compromise of civil penalties in a particular case. See *Donovan* v. *OSHRC*, 713 F.2d at 924 ("the issue of the Secretary's right to settle the case will not merge in a final judgment on the merits of the citation").

The issue is also important because the orders here concern the scope of the Secretary's prosecutorial authority under the Mine Act. Courts of appeals have recognized this issue (and the applicability of the collateral order exception) to be "important" in the analogous OSHRC context. As the Sixth Circuit explained, an OSHRC order permitting a union to prosecute an OSHA citation issued, but subsequently vacated, by the Secretary "raises broader issues as to the statutory authority of the Secretary as prosecutor of OSHA citations and as to whether the Secretary may exercise prosecutorial powers over the litigation and settlement of OSHA citations without Commission oversight and intervention." *Marshall* v.

*OSHRC*, 635 F.2d at 549. The Sixth Circuit also noted that "the Secretary and the Commission are at a deadlock in their disagreement on the scope and extent of their respective responsibilities in the administration of OSHA—a deadlock which can hamper the effective administration of the Act and should be resolved by this court in the public interest." *Ibid.*; see also *Donovan* v. *OSHRC*, 713 F.2d at 924 (noting that issues about settlements under the OSH Act present "an important issue of statutory construction, viz, the respective roles of the Commission, the Secretary, and employees in the administration of the Act").

Similarly, in a case concerning a union's objections to aspects of a settlement approved by an OSHRC ALJ, the Third Circuit explained that the Secretary's prosecutorial authority satisfies the "importance" prong:

> The Secretary's power to enter into a settlement agreement is critical to the enforcement scheme of the Act. Without this power the settlement agreements that the Secretary enters into can have no sense of finality and employers, rather than being encouraged, will be discouraged from settling these cases. Thus we are presented with a serious and unsettled question which is too important to be denied review: the power of the Secretary to settle a case as the exclusive prosecutor of the Act.

*Marshall* v. *Oil, Chem. & Atomic Workers Int'l Union*, 647 F.2d 383, 387 (3d Cir. 1981).

This Court recently reaffirmed the importance of prosecutorial-discretion questions like the one at issue here. In *Secretary of Labor* v. *Industrial TurnAround*

*Corporation*, this Court determined that Commission orders reopening final orders did not warrant collateral review because the issue to be resolved was not sufficiently important. *Sec'y of Lab.* v. *Industrial TurnAround Corp.*, 138 F.4th 1339, 1343 (D.C. Cir. 2025) ("*ITAC*"). In explaining the "relative unimportance" of the issue raised by the reopen orders, the Court contrasted that issue with the prosecutorial-discretion issues implicated in *Marshall* v. *OSHRC*, *Marshall* v. *Oil, Chemical & Atomic Workers International Union*, and *Donovan* v. *OSHRC*, noting that the Supreme Court had determined that type of issue was sufficiently important to warrant collateral review. *ITAC*, 138 F.4th 1342 (citing *Will* v. *Hallock*, 546 U.S. 345, 352 (2006)).

Third, the Commission orders are effectively unreviewable on appeal. If a Commission ALJ, on remand, disapproves the settlement and requires the parties to proceed to hearing, no meaningful review of the Commission's order will be available. "Once administrative proceedings have run their course, the interest in avoiding them has been vitiated and cannot be vindicated." *Meredith*, 177 F.3d at 1052. And if a Commission ALJ does, on remand, approve the settlement, the order is still effectively unreviewable. In *Donovan*, the Second Circuit held that the Secretary's petition for review of an OSHRC order remanding a settlement approval to an ALJ was reviewable as a collateral order, reasoning that the order was

effectively unreviewable partly because "[i]f the settlement were approved on remand, the Secretary would have no ground to petition for review." 713 F.2d at 924 n.10.

Critically, "the mere possibility that the Secretary could obtain appellate review of a Commission order ... does not mean that [the] order is effectively reviewable within the meaning of" the collateral order doctrine. *Donovan*. 713 F.2d at 924 n.10. That is because whether an issue is effectively unreviewable is given a "practical rather than a technical construction." *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (citations omitted); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 674 (D.C. Cir. 1979) ("Practical rather than technical considerations must control in this area."). The practical considerations discussed above demonstrate that the Commission orders are effectively unreviewable on appeal.

For these reasons, courts of appeals have uniformly held that they have collateral order jurisdiction in similar cases involving issues of prosecutorial discretion in the OSHRC context. *Donovan* v. *Oil, Chem., & Atomic Workers Int'l Union & Its Loc. 4-23*, 718 F.2d 1341, 1344-1346 (5th Cir. 1983) (an OSHRC order denying the Secretary's motion to vacate its order directing review of an OSHRC ALJ order approving settlement was a reviewable collateral order); *Donovan v. Allied Indus. Workers of Am.*, 760 F.2d 783, 785 (7th Cir. 1985) (an OSHRC order

allowing a union to object to a settlement reached by the Secretary and an employer on a ground other than the reasonableness of the abatement period was a reviewable collateral order); *Donovan* v. *Int'l Union, Allied Indus. Workers of Am. & its Loc. 370*, 722 F.2d 1415, 1417-1418 (8th Cir. 1983) (same); *Donovan* v. *United Steelworkers of Am., AFL-CIO*, 722 F.2d 1158, 1160 (4th Cir. 1983) (same); *Donovan* v. *OSHRC*, 713 F.2d at 923-925 (same); *Marshall* v. *Oil, Chem. & Atomic Workers Int'l Union*, 647 F.2d at 387 (same); *Marshall* v. *OSHRC*, 635 F.2d at 548-549 (an OSHRC order allowing a union to prosecute an OSHA citation issued, but subsequently vacated, by the Secretary was a reviewable collateral order); see also *Donovan* v. *Loc. 962, Int'l Chem. Workers Union*, 748 F.2d 1470, 1473 (11th Cir. 1984) (adjudicating a petition for review of an OSHRC "interlocutory decision" holding that employees could object to the Secretary's settlement).

This case presents the very type of issue identified by this Court in *ITAC*, as well as by other circuits, that merits review under the collateral order doctrine. See *ITAC*, 138 F.4th at 1342. This Court, therefore, should reach the same result and exercise collateral jurisdiction over the Commission orders at issue in this case.

### 1.2. This Case Presents an Article III Case or Controversy.

Article III extends the jurisdiction of the federal courts "only to cases or controversies." *Se. Fed. Power Customers, Inc.* v. *Harvey*, 400 F.3d 1, 4 (D.C.

Cir. 2005) (quoting *Tucson Med. Ctr.* v. *Sullivan,* 947 F.2d 971, 977 (D.C. Cir. 1991)). To present a case or controversy, an issue must be "live," *ibid.*, and "the matter at hand [must] 'be definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Aviation Enters, Inc.* v. *Orr*, 716 F.2d 1403, 1407 (D.C. Cir. 1983) (quoting *North Carolina* v. *Rice,* 404 U.S. 244, 246 (1971)). These cases satisfy both requirements.

First, the issues are live. Although the Secretary and the respondent mine operators have reached proposed settlement agreements, those settlements have not been approved by the Commission. A conditional or tentative settlement does not moot a case. *Se. Fed. Power Customers, Inc.*, 400 F.3d at 4 (citing *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 465 n.3 (1978) and *British Int'l Ins. Co.* v. *Seguros La Republica,* 354 F.3d 120, 123 (2d Cir. 2003)).

Second, there is sufficient adversity between the Secretary and the respondent mine operators to create a case or controversy. Although the Secretary and the operators reached potential settlement agreements, this Court has rejected the "claim that the adverseness required for an Article III case or controversy ends when the parties to a dispute reach a settlement subject to court approval" as "contrary to all precedent and to common sense." *Cobell* v. *Salazar*, No. 11-5270, 2012 WL 1884702, at *1 (D.C. Cir. May 22, 2012).

And the Secretary's and the operators' legal interests in any event remain adverse: the Secretary has issued citations; the operators have contested them and have not withdrawn their contests. That is sufficient to create Article III adversity. For example, the Tenth Circuit held that a case presented an Article III "case or controversy" when the Secretary sought review of an OSHRC decision invalidating a regulation, even though the employer that had been cited did not participate in the case. *Brennan* v. *OSHRC*, 505 F.2d 869, 871 (10th Cir. 1974). The court reasoned that the "[e]mployer has an interest in the controversy even though it is unwilling to do anything to protect that interest. We have a case or controversy within the purview of the Constitution." *Ibid.* The Third Circuit has reached the same conclusion. *Brennan* v. *OSHRC*, 502 F.2d 946, 948 (3d Cir. 1974) (holding that "there is a continuing case or controversy warranting judicial review even though [the employer] has not responded to the petition for review" because "the employer here has not withdrawn its contest of the Secretary's citation").

This case presents a justiciable Article III case or controversy because the issues are live and because the interests of the Secretary and the operators remain adverse.

**2. The Secretary Has Unreviewable Prosecutorial Discretion to Vacate Citations and Orders.**

    **2.1. The Mine Act's Split-Enforcement Scheme Precludes Commission Review of the Secretary's Vacatur Decisions.**

The Secretary's decision to vacate a citation—to cease prosecution altogether—is a discretionary enforcement decision. The Commission does not have authority under the Mine Act's split-enforcement scheme to review the Secretary's decision to discontinue prosecution. The Supreme Court, the courts of appeals, and indeed the Commission itself, have recognized this axiomatic principle.

The Supreme Court has already answered the question in the OSH Act context, explaining in *Cuyahoga Valley* that:

- The Secretary has the sole authority to enforce the OSH Act.

- The Secretary promulgates standards, and only the Secretary can issue a citation or order alleging that those standards were violated.

- A necessary part of the power to issue citations is the power to withdraw them.

- The Commission is a "neutral arbiter" and does not have the authority to "overturn[] the Secretary's decision not to issue or withdraw a citation."

- OSHRC review of those decisions would let the Commission make prosecutorial decisions, which is not its adjudicatory role.

474 U.S. at 6-8.

Very simple and straightforward. So simple and straightforward that, more than three decades ago, the Commission readily accepted this principle in the Mine Act context. *RBK*, 15 FMSHRC at 2101 (relying on *Cuyahoga Valley*, 474 U.S. at 7-8).

This Court has repeatedly recognized, and reinforced, that the Mine Act and the OSH Act present fundamentally similar enforcement schemes. *Twentymile*, 456 F.3d at 160-161 (comparing the two statutes' enforcement schemes and explaining that the OSH Act, "like the Mine Act," separates "enforcement and rulemaking powers from adjudicative powers," and that Congress "assign[ed] these respective functions to two *different* administrative authorities" in enacting both statutes) (quoting *Martin* v. *OSHRC*, 499 U.S. 144, 154 (1991)) (internal quotations omitted); *Sec'y of Lab.* v. *Excel Mining*, 334 F.3d 1, 6-8 (D.C. Cir. 2003) (explaining the split-enforcement scheme of the Mine Act and citing *Martin* v. *OSHRC*, 499 U.S. 144, 154 (1991), an OSH Act case); *RAG Cumberland Res., LP* v. *FMSHRC*, 272 F.3d 590, 595-596 (D.C. Cir. 2001) (same).

The courts of appeals have also repeatedly explained that the Commission's role is to adjudicate disputes, not to second-guess the Secretary's enforcement choices or to make its own. *Prairie State*, 792 F.3d at 85-86, 90-93 (explaining that the Secretary and Commission's "complementary policymaking and adjudicative functions," reflects Congress' intent that "the adjudicatory function be

institutionally independent of potential influence by the agency responsible for policymaking and enforcement decisions."); *Twentymile*, 456 F.3d at 159-161 ("[W]e cannot infer that Congress expected the Commission to use its adjudicatory power to play a policymaking role") (quoting *Martin* v. *OSHRC*, 499 U.S. at 154) (emphasis omitted); *Mach Mining, LLC* v. *Sec'y of Lab.*, 728 F.3d 643, 649-650, 657-658 (7th Cir. 2013) (explaining "that the Secretary has enforcement authority. . . . In contrast to the Secretary's duties, adjudication of citations was entrusted by Congress to the Commission," and that "[t]o permit the Commission to substitute its view for that of the Secretary simply would displace entirely the expertise of the Secretary" contrary to Congress' intent); *Speed Mining*, 528 F.3d at 319 (explaining that "the Commission's statutory role is to operate as a neutral arbiter that possesses nonpolicy-making adjudicatory powers.") ; *Mutual Mining*, 80 F.3d at 114 (explaining that "enforcement authority rest[s] with the Secretary, and adjudicatory authority rests with the Commission"). The Secretary's vacatur decisions are quintessential discretionary enforcement decisions. Because of its adjudicatory role, the Commission cannot review those decisions.

In the intervening three decades since *RBK*, the Commission has reiterated on at least six occasions that the Secretary's vacatur decisions are unreviewable. *Am. Coal Co.*, 40 FMSHRC 330, 338 (Mar. 2018) (referring to "matters that the

Commission has found are within the Secretary's discretion," including vacatur);

*Black Beauty Coal Co.*, 34 FMSHRC 1856, 1860 (Aug. 2012) (noting that the

Commission "has recognized that it does not have the authority to overturn the

Secretary's decision to vacate a citation, which is a function of her unreviewable

prosecutorial discretion."); *North Am. Drillers, LLC*, 34 FMSHRC 352, 355-356

(Feb. 2012) (the Secretary's vacatur of a citation mooted the case or controversy,

because it "eliminated the possibility that [the operator would be held liable for the

alleged violation."); *United Metro Materials*, 24 FMSHRC 140 (Feb. 2002)

(vacating a direction for review after the Secretary informed the Commission that

the citations were vacated and she would cease enforcement); *Mechanicsville*

*Concrete, Inc.*, 18 FMSHRC 877, 879 (June 1996) (acknowledging that the

Commission has "recognized that the Secretary's discretion to vacate citations is

unreviewable," and applying the principle of unreviewable agency action to the

Secretary's designation of some citations as "significant and substantial."); *Bixler*

*Mining Co.*, 16 FMSHRC 1427, 1428 (July 1994) (relief from a default judgment

was available where the Secretary vacated citations after an ALJ issued a default

decision but before the parties received it).

In each of these decisions, the Commission cited *RBK*, acknowledging its extant

holding, reiterated as recently as 2018: that the Commission does not have the

authority to review the Secretary's vacatur decisions because they are a function of the Secretary's unreviewable prosecutorial discretion. Suddenly, the Commission now reverses course.

The Commission suggests that *Cuyohoga Valley* is distinguishable because it is an OSH Act case and the OSH Act does not have a provision like section 110(k) of the Mine Act authorizing the OSHRC to review penalty settlements. JA 359. But the Commission has failed to heed this Court's well-settled treatment of the OSH Act and the Mine Act as fundamentally similar enforcement schemes. See, *e.g.*, *Twentymile*, 456 F.3d at 160-161 ("we have previously, and repeatedly, applied *Martin's* analysis [under the OSH Act] to the Mine Act.").

The Commission also purports to distinguish the Mine Act from the OSH Act by stating that OSH Act settlements are published in the Federal Register. JA 359. This is not a meaningful distinction. All Mine Act settlements are a matter of public record and are subject to release under the Freedom of Information Act. See 5 U.S.C. 552; 29 C.F.R. 2702.7(a) (Commission procedural rule) ("Except for [exempted] records. . . all records of the Commission or in its custody are available to any person who requests them. . . .")  This imbues the Mine Act settlement process with the transparency that Congress intended. S. Rep. 95-181, at 44 (1977)

(reflecting concerns that settlements under the prior statutory and regulatory regime were "not on the record.")

The Commission also suggests that *RBK* is distinguishable from the present cases because there, the vacatur was in the context of a voluntary dismissal, not a settlement. This is irrelevant. Vacatur is vacatur, and the Secretary's authority to vacate citations is not context-dependent, see pp. 56-57, *infra*. As the Commission accepted in *RBK*, upon vacatur, "there simply is no penalty to be considered." 15 FMSHRC at 2100. And *RBK* carves out no special context for settlements. See generally 15 FMSHRC 2099.

At its root, the Commission's attempt to distinguish *RBK* is nothing more than an inexplicable reversal of its prior holding. This Court has "long held [that] 'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Lone Mountain Processing* v. *Sec'y of Lab.*, 709 F.3d 1161, 1164 (D.C. Cir. 2013) (citing *Greater Boston Television Corp.* v. *FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)). In *Lone Mountain Processing*, a case addressing the Commission's denial of motions to reopen final agency orders, this Court warned the Commission that it must explain why departure from precedent is warranted. 709 F.3d at 1164.

For thirty-two years, the Commission has respected the Secretary's unreviewable discretion to vacate a citation, but now, the Commission apparently has authority to review those decisions. The Commission's sudden reversal is based on distorted rationale that belies the statutory text and applicable jurisprudence, and therefore does not qualify as "reasoned analysis": the Supreme Court's decision in *Cuyahoga Valley* apparently no longer applies, the Commission's decision in *RBK* is now limited to vacaturs outside of the settlement context, legislative history has expanded the Commission's role to "arrangements" that "may not directly affect" the monetary penalty, JA 361, and the Commission's procedural rules are now a source of authority to ignore the statutory text. Cf. *Lone Mountain Processing*, 709 F.3d at 1163-1164.

### 2.2. Section 110(k) Does Not Give the Commission Authority to Review the Secretary's Vacatur Decisions.

The presumption of unreviewability of enforcement decisions may be overcome if a statute "has indicated [Congress's] intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion . . . ." *Chaney*, 470 U.S. at 834. If there are no "no judicially manageable standards . . . for judging how and when an agency should exercise its discretion," then those discretionary decisions are unreviewable. *Id.* at 830. Whether a statute provides a "meaningful standard" depends on "the particular language and overall

structure of the statute in question, as well as 'the nature of the administrative action at issue.'" *Speed Mining*, 528 F.3d at 317 (citing *Webster* v. *Doe*, 486 U.S. 592, 600-601 (1988) and quoting *Drake* v. *FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)).

The Commission has already concluded that section 110(k) does not make the Secretary's vacatur decisions reviewable. In *RBK*, the ALJ denied motions to dismiss despite the Secretary's notice that MSHA had *already* vacated the citations at issue before advising the ALJ. 15 FMSHRC at 2100. The ALJ reasoned that the Secretary had "failed to secure the Commission's approval in accordance with section 110(k) of the Act . . . ." *Ibid.* The Commission reversed. And in *Black Beauty*, the Commission reaffirmed the Secretary's unreviewable discretion to vacate citations and orders and said that its section 110(k) "review authority may not extend to certain areas of the Secretary's enforcement authority." *Black Beauty*, 34 FMSHRC at 1860. The only sensible way to read *RBK* and *Black Beauty* is as recognizing that section 110(k) does not give the Commission authority to review the Secretary's vacatur decisions.

Even if the Commission had not already answered this question, the answer is obvious. Section 110(k) does not indicate Congress's intent to circumscribe the Secretary's discretionary vacatur decisions because it does not apply to those decisions. By its plain terms, it applies only to settlements of *penalties*. Because the

Secretary's decision to vacate a citation or order eliminates the underlying allegation altogether, there is no penalty left to be settled, and nothing for the Commission to review.

Nevertheless, the Commission here concluded that section 110(k) makes the Secretary's vacatur decisions reviewable, apparently believing that a post-contest vacatur is a penalty compromise by another name—a reduction in the penalty amount to zero. JA 356-358, 722. But eliminating a penalty is merely an ancillary effect of an enforcement decision to vacate, not a penalty settlement that the Commission can review. If it were, then all decisions to vacate—including citations that were not yet contested or otherwise not in the settlement context— would be reviewable. But the Commission has already held that they are not. *RBK*, 15 FMSHRC 2099. Plus, vacaturs are fundamentally different from penalty compromises. If the Secretary decides to retain a citation but reduce the penalty amount to one dollar, that is a penalty compromise. In contrast, a vacatur erases a citation entirely, which has enforcement consequences for an operator's history of violations, and other enforcement issues. It is an *enforcement* decision, not a *penalty* compromise.

The Commission also suggested, in its decision in *Crimson Oak Grove*, that the language of section 110(k), which provides that contested penalties shall not be

"compromised, mitigated, or settled" without Commission approval, extends the Commission's review authority to "arrangements between the Secretary and the operator that, by themselves, may not directly affect a civil penalty but are integral to the settlement package." JA 361. But that is not what the statute says. See 30 U.S.C. 820(k). The vacatur of a citation is not a penalty settlement. It is not a compromise or a mitigation, either. As the Commission appears to acknowledge, its impact on the penalty is indirect, because it is not an action to reduce (or compromise, mitigate, settle, decrease, lower, allay, or otherwise resolve) the penalty. It is a different action entirely: to vacate a citation, which has the effect of erasing the citation in its entirety. The Commission may not arrogate to itself the Secretary's decision to vacate a citation—the charging instrument—just because an enforcement decision has an incidental effect of eliminating a penalty. Section 110(k) addresses penalty compromises, mitigations, and settlements; it does not address incidental or ancillary impacts on penalties as the result of an appropriately independent discretionary enforcement action by the Secretary.

The Commission also cites its own procedural Rule 31, which provides that a "motion to approve a penalty settlement shall include . . . facts in support of the penalty agreed to by the parties." 29 C.F.R. 2700.31. This procedural rule, like section 110(k), refers only to penalties, not vacaturs. And a procedural rule cannot

overcome the discretionary authority conferred on the Secretary by the statute. 30 U.S.C. 814, 817.

The fact that Congress gave the Commission the authority to approve penalty compromises, but did *not* give it the authority to review vacatur decisions, is significant. See *Gulf Restoration Network* v. *McCarthy*, 783 F.3d 227, 234 (5th Cir. 2015) ("While Congress can trump this presumption [of unreviewability], it must be explicit in doing so."). Congress knew how to provide for Commission approval of the Secretary's penalty settlements; if it meant to provide for review of the Secretary's decisions to vacate, it would have said so. See, *e.g.*, *Connecticut Nat. Bank* v. *Germain*, 503 U.S. 249, 253-254 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Nothing in the legislative history of section 110(k) suggests that Congress meant it to limit the Secretary's vacatur decisions. Instead, Congress focused on *transparency*: on guaranteeing that settlement decisions would be published to avoid any "unwarranted lowering of penalties" stemming from "off-the-record settlement negotiations." S. Rep. No. 95-181, at 44-45 (1977). Congress's desire for

transparency about penalty settlements is not a limit on the Secretary's vacatur decisions.[7]

Nor does the Mine Act provide any "meaningful standard" for the Commission to review the Secretary's vacatur decisions. Neither section 110(k) nor section 110(i) say anything about how the Secretary should vacate citations or how the Commission should review that decision. See *Baltimore Gas & Elec. Co.* v. *FERC*, 252 F.3d 456, 461 (D.C. Cir. 2001) (a statute provides no meaningful standard if it is "utterly silent on the manner in which the [agency] is to proceed against a particular transgressor").

The Commission suggests that the six-factor test in section 110(i) provides a "meaningful standard" to review vacatur decisions. This is even more puzzling, and strained, than the Commission's reliance on section 110(k). Section 110(i) identifies factors that ALJs are required to consider in *assessing* a penalty, not with the Secretary's authority to vacate citations. See 30 U.S.C. 820(i). Section 110(i) says nothing about the Secretary's enforcement discretion. The statute is silent on

---

[7] The Commission's reliance on the legislative history of the Mine Act (to address the shortcomings of the prior regulatory regime) in support of its expansive reading of section 110(k) is no longer apt. JA 356-357, 722 n.6. Congress's concerns reflected a practice before the 1977 Mine Act was passed, when all prosecutorial and adjudicatory functions were performed entirely within the Department of the Interior. That is no longer the case. Mine Act settlements are a matter of public record, see p. 40, *supra*.

any standard for imposing limits on the Secretary's vacatur discretion, but the Commission "hears sounds in the silence." *Twentymile*, 456 F.3d at 157-158.

Further: under *Cuyahoga Valley*, section 110(i) does not provide a meaningful standard to review vacatur decisions. The OSH Act contains a similar provision that identifies four factors for OSHRC assessment of penalties. See 29 U.S.C. 666(j) (authorizing OSHRC to assess penalties for violations, with consideration of the employer's size of business, the gravity of the violation, the employer's good faith, and the history of previous violations). In *Cuyahoga Valley*, though the Supreme Court did not engage directly with that provision, it evidently did not find that 29 U.S.C. 666(j) created a meaningful standard to review the Secretary's vacatur decisions in the OSH Act context. See, generally, *Cuyahoga Valley*, 474 U.S. 3. Logic compels the conclusion that section 110(i) likewise does not create such a standard in the Mine Act context.

Additionally, the "overall structure of the statute in question," *Speed Mining*, 528 F.3d at 317, does not suggest that the Commission can review the Secretary's vacatur decisions. Generally, the Mine Act gives the Secretary the exclusive authority to enforce the statute. *Mutual Mining*, 80 F.3d at 113-114; *Brock* v. *Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986). That authority

includes decisions about *how* to enforce it. *Twentymile*, 456 F.3d at 156-159;

*Cathedral Bluffs*, 796 F.2d at 538.

Section 104 of the Mine Act authorizes the Secretary to issue citations and

orders if the Secretary "believes" or "finds" that there are violations. 30 U.S.C.

814(a)-(e). It stands to reason that if the Secretary no longer believes or finds that

there is a violation, then the Secretary is the one who decides to vacate the citation

or order alleging one. Section 104(h) is another source of statutory authority for the

Secretary's charging decisions: "Any citation or order issued under this section

shall remain in effect until modified, terminated, *or vacated by the Secretary*," the

Commission, or the courts. 30 U.S.C. 814(h) (emphasis added). Congress would

not have given the Secretary the independent authority to vacate if Congress did

not mean for the Secretary to exercise that authority independently.

Moreover, the "nature of the administrative action at issue" supports the

Secretary's position. *Speed Mining*, 528 F.3d at 318. The decision to vacate a

citation is a decision *not* to pursue enforcement proceedings, and courts have

consistently held that those decisions are unreviewable. *Chaney*, 470 U.S. at 837-

838 (discussing the presumption of unreviewability of agency's prosecutorial

discretion); *Public Citizen, Inc.* v. *FERC*, 7 F.4th 1177, 1195 (D.C. Cir. 2021)

(finding agency decision not to pursue an enforcement action after an investigation

49

to be unreviewable); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv.* v. *United States Corps of Engineers*, 888 F.3d 906, 916-917 (8th Cir. 2018) (unreviewable agency decision not to enforce the recapture provision of the Clean Water Act); *Paulsen* v. *CNF Inc.*, 559 F.3d 1061, 1085 (9th Cir. 2009) (unrevieweable agency decision not to pursue enforcement action related to a pension plan terminated in connection with a bankruptcy); *Sierra Club* v. *Larson*, 882 F.2d 128, 132 (4th Cir. 1989) (unreviewable agency decision not to take enforcement action under the Highway Beautification Act). As the Fourth Circuit put it, "[i]t is difficult to think of a category of administrative action less prone to review than the Secretary's exercise of her exclusive authority to enforce the Mine Act." *Speed Mining*, 528 F.3d at 318; see also *Cathedral Bluffs,* 796 F.2d at 538 (an "agency's exercise of its enforcement discretion" is "an area in which the courts have traditionally been most reluctant to interfere").

The Supreme Court has recognized that the decision not to take enforcement action is generally committed to an agency's discretion for various reasons, including that it may implicate an agency's expertise, and that in *not* taking enforcement action an agency "generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Chaney*, 470 U.S. at 831-832. The

Secretary's decision to vacate a citation implicates the Secretary's expertise in her role as the Mine Act's prosecutor. And vacating a citation does not coerce an operator into compliance, because it does not create an obligation but rather eliminates the citation or order at issue.

### 2.3.   The Secretary's Vacatur Decisions Are Unreviewable, Whether They Occur in a Settlement Context or Not.

In granting interlocutory review, the Commission re-framed the issue as concerning "the Secretary's decision to vacate a citation in the context of a settlement, when the vacatur is contingent upon the resolution of other citations." JA 203. The Commission's re-framing of the issue reveals its premise based on meritless assumptions. The Commission assumes that the Secretary's vacaturs are "contingent upon" the resolution of other citations, that the timing of the Secretary's vacatur decisions is somehow relevant to its authority to review them, and that the method of vacatur is also somehow relevant to its authority to review them. The Commission is wrong.

The Commission assumes that the Secretary's discretionary vacatur decisions are "contingent upon the resolution of other citations," as part of a "deal" between the parties "in exchange for the mitigation or acceptance of [another] proposed penalty." JA 360, 360 n.10, 361. This presumption mirrored the ALJ's reasoning; the ALJ "recognize[d] the Secretary's prosecutorial discretion as a general matter,"

JA 247, but refused to grant the motions to approve settlement because he believed the vacatur decision "*appears* to involve quid pro quo" rather than a "pure exercise of prosecutorial discretion." JA 243 (emphasis added). But these presumptions are just that: presumptive. There is no basis in the evidentiary record to support the Commission's presumption that any provision of any settlement here is contingent upon any other provision in that settlement.

The Commission's rationale also runs afoul of the Supreme Court's admonition in *Chaney*. As *Chaney* makes clear, the Secretary's vacatur decisions need not be a "pure" exercise of prosecutorial discretion; the Secretary may vacate citations based on policy considerations. *Chaney*, 470 U.S. at 831 (considerations include an "agency's overall policies"). In the past, the Commission agreed. In *North American Drillers*, the Commission acknowledged that the Secretary may vacate citations "that she has determined to be legally *or otherwise unworthy of prosecution*." 34 FMSHRC at 359 (emphasis added).

The Commission's suggested solution is that the Secretary can simply explain her vacatur decisions. JA 358. But agencies tasked with enforcement engage in a "complicated balancing of a number of factors" which are specifically within the agency's expertise, including agency resources, likelihood of success, and an agency's general policies. *Chaney*, 470 U.S. at 831. The Commission assumes for

itself the task of assessing these complicated considerations, an effort that would "invite[] the reviewing body to substitute its views of enforcement policy for those of the Secretary, a power that . . . the Commission does not possess." *Twentymile*, 456 F.3d at 158.

The Commission also assumes that the timing of the Secretary's decision to vacate is somehow relevant to its authority to review such charging decisions. The Commission suggests that it is the contested nature of the citations that confers on it the authority to review vacaturs, but the Supreme Court has already rejected this rationale. In *Cuyahoga Valley*, the Sixth Circuit concluded that the OSHRC could review the Secretary's vacatur decision largely because a complaint and answer had already been filed, so that the OSHRC "had control of the case . . . ." 474 U.S. at 5. But the Supreme Court emphasized that vacatur decisions are enforcement decisions left to the Secretary. *Id.* at 6-8. Vacatur decisions are unreviewable because they are one of the Secretary's discretionary decisions about how to enforce the Mine Act. Cf. *NY State Dept. of Lab.* v. *F.C.C.*, 984 F.2d 1209, 1215 (D.C. Cir. 1993) ("We can see no reason for the FCC to have less latitude in the early stages of an enforcement action than after its completion.").

The Commission's analysis also assumes that the method by which the Secretary executes her decision to vacate a citation is somehow meaningful. In

*RBK*, the Commission invited the parties to submit a voluntary stipulation of dismissal. *RBK*, 15 FMSHRC at 2101 fn.2. The logical conclusion of the Commission's decisions here would suggest that the Secretary's vacatur decisions are unreviewable if contained in a stipulation of dismissal but reviewable if contained in some other motion for resolution. But that would create an absurd and inefficient regime in which the Secretary's enforcement authority depends on the title of a document, or hinges on whether she files two pleadings instead of one.

That the Secretary informs the Commission of her vacatur decisions in a settlement document is merely a matter of convenience and efficiency for the Secretary, operators, and the Commission when all citations and orders in a docket can be resolved at the same time. When the Secretary and operators reach a settlement on some citations and orders in a docket, and the Secretary has decided to vacate a citation or order, the Secretary typically files one pleading addressing all citations and orders at once. This approach reduces paperwork, simplifies recordkeeping, and resolves dockets efficiently, but does not curtail the Secretary's inherent discretionary authority to vacate a citation.

The Secretary's decision to vacate a citation or order is unreviewable, no matter *when* the Secretary makes that decision or *how* the Secretary informs the Commission about that decision. The Commission cannot require justification of

the Secretary's vacatur decision. An unreviewable decision is just that:

unreviewable.[8] *AmCoal I*, 38 FMSHRC at 1980; *Admin. Law & Practice* § 12:10 (3d

ed.) ("Unreviewability is entirely different from even very deferential review

because it cuts off at the threshold consideration of an agency decision or part of an

agency decision.").

### 3. Fairness Considerations Support the Secretary's Unreviewable Discretion to Vacate Citations.

MSHA inspectors make on-the-ground decisions about whether and what

citations and orders to issue. They are well-trained in making those decisions, but

they are sometimes acting on incomplete information. As such, after additional

review, it is sometimes necessary to vacate a citation. See *American Aggregates of*

*Mich.*, Inc., 42 FMSHRC 570, 581 n.12 (Aug 2020). The Secretary may reach this

conclusion in different ways. For example, operators may avail themselves of a pre-

contest conference with MSHA and raise additional facts during the conference. 30

C.F.R. 100.6. Or, when in litigation after a contest, discovery may lead to additional

facts that necessitate a change. It therefore cannot be the case, as the Commission

suggests, that the Secretary has unreviewable discretion to vacate a citation *before* a

contest is filed, but not *after* one is filed. This would mean that, after a contest, no

---

[8] Subject to constitutional constraints. See *Wayte*, 470 U.S. at 608.

matter what the Secretary learns, the Commission could prevent the Secretary from vacating a citation. This would effectively make the Commission the prosecutor, which is not its role. Cf. *Twentymile*, 456 F.3d at 158.

It also is unfair to operators: an operator who receives a safety and health conference and presents facts warranting vacatur will have a citation vacated, but if that operator contests the citation before presenting identical facts, there would be no guarantee that the Commission would agree to the Secretary's vacatur decision. An operator should not be forced to proceed to an evidentiary hearing just to have a citation vacated. And to force an operator to do so is an exercise of coercive power by the Commission. Cf. *Chaney*, 40 U.S. at 831 (refusal to act is generally not coercive); see p. 52, *supra*. An operator's ability to present information to the Secretary, and to have citations vacated when warranted, does not depend on where a citation happens to be in the contest process. See *Cuyahoga Valley*, 474 U.S. at 5 (rejecting the Sixth Circuit's reasoning that the OSHRC could deny the Secretary's authority to vacate an OSHA citation just because the OSHRC "had control of the case.")[9]

---

[9] The Commission ignores the Secretary's Equal Access to Justice Act argument, JA 231-232, 682-683, apparently dismissing the Secretary's concerns about incurring liability if she is forced to advance a position that she does not believe is substantially justified. See 5 U.S.C. 504. While the Commission does mention that

## 4. Remedy

Should this Court agree with the Secretary that her discretionary authority to vacate citations is unreviewable, the Court should vacate the Commission's orders, because they are errors of law. See, *e.g.*, *Twentymile*, 456 F.3d at 161. The Court should also instruct the Commission to vacate the ALJ's orders denying the Secretary's motions to approve settlement, because those are an abuse of discretion. See *AmCoal I*, 38 FMSHRC at 1984 (the Commission reviews a ALJ's order denying a motion to approve settlement for abuse of discretion; an ALJ's decision is an abuse of discretion where it "is based on an improper understanding of the law."). With respect to the cases where nothing remains for the ALJ to review (i.e., cases with settlement motions that included only the Secretary's vacaturs and the operator's withdrawal of its contests or acceptance of citations and orders as written),[10] and cases where the ALJ has indicated that he would grant the

---

the operators agreed in these cases to waive EAJA claims, JA 353-354, the proposed settlement agreements were not approved by the ALJ, so none of the proposed terms went into effect. If the Secretary's attempt to vacate a citation is rejected by the Commission, and then the case goes to hearing and the ALJ ultimately vacates the citation, the Secretary may face exposure for advancing a case that is not substantially justified. It is one thing for the Secretary to advance novel arguments and risk EAJA exposure on her own behalf, it is quite another thing for the Commission to expose the Secretary to that risk.

[10] *Crimson Oak Grove Res.* (FMSHRC No. SE 2021-0112), *River City Stone-Div/*

motions to approve settlement if his orders denying those motions were vacated,[11] this Court should instruct the Commission to grant the Secretary's motions to resolve the cases. See *Am. Mine Svcs., Inc.*, 15 FMSHRC 1830, 1834 (Sept. 1993) (remand is unnecessary if an ALJ's reconsideration would serve no purpose). The remaining cases[12] involve penalty settlements, which the Commission does have authority to review under section 110(k). See 30 U.S.C. 820(k). The Court should instruct the Commission to remand those cases for an ALJ to consider, exclusive of, and without regard to, the Secretary's unreviewable discretion to vacate citations, the motions to approve settlement.

---

*Mathy Construction Co.* (FMSHRC No. LAKE 2021-0145), and *Greenbrier Minerals* (FMSHRC No. WEVA 2021-0294).

[11] *Consol PA Coal*, (FMSHRC No. PENN 2021-0108), *County Line Stone*, (FMSHRC No. YORK 2022-0003), and *Ramaco Res. LLC*, (FMSHRC No. WEVA 2022-0260). See Order Staying Proceedings, *Consol PA Coal Co. LLC*, No. PENN 2021-0108 (ALJ Mar. 7, 2022); Order Staying Proceedings, *County Line Stone Co Inc.*, No. YORK 2022-0003 (ALJ Feb. 3, 2022); Order Denying Mot. to Hold Case in Abeyance, *Ramaco Res. LLC*, No. WEVA 2022-0260 (ALJ June 3, 2022).

[12] *Crimson Oak Grove Res.* (FMSHRC No. SE 2021-0134) and *Holcim (US) Inc.* (FMSHRC No. YORK 2021-0023).

## Conclusion

For the foregoing reasons, the Court should grant the Secretary's petition for review, vacate the Commission's orders, and remand the matter to the Commission for further disposition consistent with this Court's decision.

Respectfully submitted,

LORI CHAVEZ-DEREMER
Secretary of Labor

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

s/ SUSANNAH M. MALTZ
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW,
Suite N4420
Washington, DC 20210
maltz.susannah.m@dol.gov
(202) 693-5393
(202) 693-9392 (fax)

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

This document complies with the type-volume limit of Fed. R. App. P.

32(a)(7)(B) because, excluding the parts of the document exempted under Fed. R.

App. P. 32(f), it contains 12,948 words.

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in Microsoft Word in 14-point Equity.

s/ SUSANNAH M. MALTZ
Attorney

## Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the District of Columbia Circuit by using the

appellate CM/ECF system on September 22, 2025 and the following registered

users will be served via the CM/ECF system:

T. Jason Riley
*Federal Mine Safety and Health Review Commission*

Ted Hunt
*Crimson Oak Grove Resources*

Adele Abrams
*River City Stone*

William K. Doran & Zachary Byers
*Holcim*

Lorna Waddell
*Greenbrier Minerals*

Patrick Dennison
*Consol Pennsylvania Coal*

Paul T. Sharlow
*County Line Stone*

Jonathan Ellis
*Ramaco Resource*

> s/ SUSANNAH M. MALTZ
> Attorney

**Addendum – Pertinent Statutes and Regulations**

**Statutes**

**Occupational Safety and Health Act of 1970**

### 29 U.S.C. 655 - Standards

(e) Statement of reasons for Secretary's determinations; publication in Federal Register

Whenever the Secretary promulgates any standard, makes any rule, order, or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this chapter, he shall include a statement of the reasons for such action, which shall be published in the Federal Register.

### 29 U.S.C. 666 – Civil and criminal penalties

(j) Authority of Commission to assess civil penalties

The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.

**Mine Safety and Health Act of 1977**

### 30 U.S.C. 814 – Citations and orders

(a) Issuance and form of citations; prompt issuance

If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The requirement for the issuance of a citation with reasonable promptness shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter.

(b) Follow-up inspections; findings

c

If, upon any follow-up inspection of a coal or other mine, an authorized representative of the Secretary finds (1) that a violation described in a citation issued pursuant to subsection (a) has not been totally abated within the period of time as originally fixed therein or as subsequently extended, and (2) that the period of time for the abatement should not be further extended, he shall determine the extent of the area affected by the violation and shall promptly issue an order requiring the operator of such mine or his agent to immediately cause all persons, except those persons referred to in subsection (c), to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

(c) Exempt persons

The following persons shall not be required to be withdrawn from, or prohibited from entering, any area of the coal or other mine subject to an order issued under this section:

(1) any person whose presence in such area is necessary, in the judgment of the operator or an authorized representative of the Secretary, to eliminate the condition described in the order;

(2) any public official whose official duties require him to enter such area;

(3) any representative of the miners in such mine who is, in the judgment of the operator or an authorized representative of the Secretary, qualified to make such mine examinations or who is accompanied by such a person and whose presence in such area is necessary for the investigation of the conditions described in the order; and

(4) any consultant to any of the foregoing.

(d) Findings of violations; withdrawal order

(1) If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards,

he shall include such finding in any citation given to the operator under this chapter. If, during the same inspection or any subsequent inspection of such mine within 90 days after the issuance of such citation, an authorized representative of the Secretary finds another violation of any mandatory health or safety standard and finds such violation to be also caused by an unwarrantable failure of such operator to so comply, he shall forthwith issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (c) to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

(2) If a withdrawal order with respect to any area in a coal or other mine has been issued pursuant to paragraph (1), a withdrawal order shall promptly be issued by an authorized representative of the Secretary who finds upon any subsequent inspection the existence in such mine of violations similar to those that resulted in the issuance of the withdrawal order under paragraph (1) until such time as an inspection of such mine discloses no similar violations. Following an inspection of such mine which discloses no similar violations, the provisions of paragraph (1) shall again be applicable to that mine.

(e) Pattern of violations; abatement; termination of pattern

(1) If an operator has a pattern of violations of mandatory health or safety standards in the coal or other mine which are of such nature as could have significantly and substantially contributed to the cause and effect of coal or other mine health or safety hazards, he shall be given written notice that such pattern exists. If, upon any inspection within 90 days after the issuance of such notice, an authorized representative of the Secretary finds any violation of a mandatory health or safety standard which could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, the authorized representative shall issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (c), to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

(2) If a withdrawal order with respect to any area in a coal or other mine has been issued pursuant to paragraph (1), a withdrawal order shall be issued by an

authorized representative of the Secretary who finds upon any subsequent inspection the existence in such mine of any violation of a mandatory health or safety standard which could significantly and substantially contribute to the cause and effect of a coal or other mine health or safety hazard. The withdrawal order shall remain in effect until an authorized representative of the Secretary determines that such violation has been abated.

(3) If, upon an inspection of the entire coal or other mine, an authorized representative of the Secretary finds no violations of mandatory health or safety standards that could significantly and substantially contribute to the cause and effect of a coal or other mine health and safety hazard, the pattern of violations that resulted in the issuance of a notice under paragraph (1) shall be deemed to be terminated and the provisions of paragraphs (1) and (2) shall no longer apply. However, if as a result of subsequent violations, the operator reestablishes a pattern of violations, paragraphs (1) and (2) shall again be applicable to such operator.

(4) The Secretary shall make such rules as he deems necessary to establish criteria for determining when a pattern of violations of mandatory health or safety standards exists.

(h) Duration of citations and orders

Any citation or order issued under this section shall remain in effect until modified, terminated or vacated by the Secretary or his authorized representative, or modified, terminated or vacated by the Commission or the courts pursuant to section 815 or 816 of this title.

## 30 U.S.C. 815 – Procedure for enforcement

(a) Notification of civil penalty; contest

If, after an inspection or investigation, the Secretary issues a citation or order under section 814 of this title, he shall, within a reasonable time after the termination of such inspection or investigation, notify the operator by certified mail of the civil penalty proposed to be assessed under section 820(a) of this title for the violation cited and that the operator has 30 days within which to notify the Secretary that he wishes to contest the citation or proposed assessment of penalty. A copy of such notification shall be sent by mail to the representative of miners in such mine. If, within 30 days from the receipt of the notification issued by the

Secretary, the operator fails to notify the Secretary that he intends to contest the citation or the proposed assessment of penalty, and no notice is filed by any miner or representative of miners under subsection (d) of this section within such time, the citation and the proposed assessment of penalty shall be deemed a final order of the Commission and not subject to review by any court or agency. Refusal by the operator or his agent to accept certified mail containing a citation and proposed assessment of penalty under this subsection shall constitute receipt thereof within the meaning of this subsection.

(d) Contest proceedings; hearing; findings of fact; affirmance, modification, or vacatur of citation, order, or proposed penalty; procedure before Commission

If, within 30 days of receipt thereof, an operator of a coal or other mine notifies the Secretary that he intends to contest the issuance or modification of an order issued under section 814 of this title, or citation or a notification of proposed assessment of a penalty issued under subsection (a) or (b) of this section, or the reasonableness of the length of abatement time fixed in a citation or modification thereof issued under section 814 of this title, or any miner or representative of miners notifies the Secretary of an intention to contest the issuance, modification, or termination of any order issued under section 814 of this title, or the reasonableness of the length of time set for abatement by a citation or modification thereof issued under section 814 of this title, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5, but without regard to subsection (a)(3) of such section), and thereafter shall issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation, order, or proposed penalty, or directing other appropriate relief. Such order shall become final 30 days after its issuance. The rules of procedure prescribed by the Commission shall provide affected miners or representatives of affected miners an opportunity to participate as parties to hearings under this section. The Commission shall take whatever action is necessary to expedite proceedings for hearing appeals of orders issued under section 814 of this title.

## 30 U.S.C. 816 – Judicial review of Commission orders

(a) Petition by person adversely affected or aggrieved; temporary relief

(1) Any person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court within 30 days following the issuance of such order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and to the other parties, and thereupon the Commission shall file in the court the record in the proceeding as provided in section 2112 of Title 28. Upon such filing, the court shall have exclusive jurisdiction of the proceeding and of the questions determined therein, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside, in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The Commission may modify or set aside its original order by reason of such modified or new findings of fact. Upon the filing of the record after such remand proceedings, the jurisdiction of the court shall be exclusive and its judgment and degree.[13] shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28.

(b) Petition by Secretary for review or enforcement of final Commission orders

---

[13] So in original. Probably should be "decree."

The Secretary may also obtain review or enforcement of any final order of the Commission by filing a petition for such relief in the United States court of appeals for the circuit in which the alleged violation occurred or in the Court of Appeals for the District of Columbia Circuit, and the provisions of subsection (a) shall govern such proceedings to the extent applicable. If no petition for review, as provided in subsection (a), is filed within 30 days after issuance of the Commission's order, the Commission's findings of fact and order shall be conclusive in connection with any petition for enforcement which is filed by the Secretary after the expiration of such 30-day period. In any such case, as well as in the case of a noncontested citation or notification by the Secretary which has become a final order of the Commission under subsection (a) or (b) of section 815 of this title, the clerk of the court, unless otherwise ordered by the court, shall forthwith enter a decree enforcing the order and shall transmit a copy of such decree to the Secretary and the operator named in the petition. In any contempt proceeding brought to enforce a decree of a court of appeals entered pursuant to this subsection or subsection (a), the court of appeals may assess the penalties provided in section 820 of this title, in addition to invoking any other available remedies.

### 30 U.S.C. 817 – Procedures to Counteract Dangerous Conditions

(a) If, upon any inspection or investigation of a coal or other mine which is subject to this Act, an authorized representative of the Secretary finds that an imminent danger exists, such representative shall determine the extent of the area of such mine throughout which the danger exists, and issue an order requiring the operator of such mine to cause all persons, except those referred to in section 104(c), to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such imminent danger and the conditions or practices which caused such imminent danger no longer exist. The issuance of an order under this subsection shall not preclude the issuance of a citation under section 104 or the. proposing of a penalty under section 110.

(b)(1) If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds (A) that conditions exist therein which have not yet resulted in an imminent danger, (B) that such conditions cannot be effectively abated through the use of existing technology, and (C) that reasonable assurance cannot be provided that the continuance of mining operations under such conditions will not result in an imminent danger, he shall determine the area throughout which such

conditions exist, and thereupon issue a notice to the operator of the mine or his agent of such conditions, and shall file a copy thereof, incorporating his findings therein, with the Secretary and with the representative of the miners of such mine. Upon receipt of such copy, the Secretary shall cause such further investigation to be made as he deems appropriate, including an opportunity for the operator or a representative of the miners to present information relating to such notice.

(2) Upon the conclusion of an investigation pursuant to paragraph (1), and an opportunity for a public hearing upon request by any interested party, the Secretary shall make findings of fact, and shall by decision incorporating such findings therein, either cancel the notice issued under this subsection or issue an order requiring the operator of such mine to cause all persons in the area affected, except those persons referred to in subsection (c) of section 104 to be withdrawn from, and be prohibited from entering, such area until the Secretary, after a public hearing affording all interested persons an opportunity to present their views, determines that such conditions have been abated. Any hearing under this paragraph shall be of record and shall be subject to section 554 of title 5 of the United States Code.

(c) Orders issued pursuant to subsection (a) shall contain a detailed description of the conditions or practices which cause and constitute an imminent danger and a description of the area of the coal or other mine from which persons must be withdrawn and prohibited from entering.

(d) Each finding made and order issued under this section shall be given promptly to the operator of the coal or other mine to which it pertains by the person making such finding or order, and all of such findings and orders shall be in writing, and shall be signed by the person making them. Any order issued pursuant to subsection (a) may be modified or terminated by an authorized representative of the Secretary. Any order issued under subsection (a) or (b) shall remain in effect until vacated, modified, or terminated by the Secretary, or modified or vacated by the Commission pursuant to subsection (e), or by the courts pursuant to section 106(a).

(e)(1) Any operator notified of an order under this section or any representative of miners notified of the issuance, modification, or termination of such an order may apply to the Commission within 30 days of such notification for reinstatement, modification or vacation of such order. The Commission shall forthwith afford an opportunity for a hearing (in accordance with section 554 of title 5, United States

Code, but without regard to subsection (a)(3) of such section) and thereafter shall issue an order, based upon findings of fact, vacating, affirming, modifying, or terminating the Secretary's order. The Commission and the courts may not grant temporary relief from the issuance of any order under subsection (a).

(2) The Commission shall take whatever action is necessary to expedite proceedings under this subsection.

## 30 U.S.C. 820 – Penalties

(i) Authority to assess civil penalties

The Commission shall have authority to assess all civil penalties provided in this chapter. In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation. In proposing civil penalties under this chapter, the Secretary may rely upon a summary review of the information available to him and shall not be required to make findings of fact concerning the above factors.

(k) Compromise, mitigation, and settlement of penalty

No proposed penalty which has been contested before the Commission under section 815(a) of this title shall be compromised, mitigated, or settled except with the approval of the Commission. No penalty assessment which has become a final order of the Commission shall be compromised, mitigated, or settled except with the approval of the court.

## 30 U.S.C. 823 – Federal Mine Safety and Health Review Commission

(d) Proceedings before administrative law judge; administrative review

(1) An administrative law judge appointed by the Commission to hear matters under this chapter shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such administrative law judge by the chief administrative law judge of the Commission or by the Commission, and shall make a decision which constitutes his

final disposition of the proceedings. The decision of the administrative law judge of the Commission shall become the final decision of the Commission 40 days after its issuance unless within such period the Commission has directed that such decision shall be reviewed by the Commission in accordance with paragraph (2). An administrative law judge shall not be assigned to prepare a recommended decision under this chapter.

(2) The Commission shall prescribe rules of procedure for its review of the decisions of administrative law judges in cases under this chapter which shall meet the following standards for review:

(A)(i) Any person adversely affected or aggrieved by a decision of an administrative law judge, may file and serve a petition for discretionary review by the Commission of such decision within 30 days after the issuance of such decision. Review by the Commission shall not be a matter of right but of the sound discretion of the Commission.

(ii) Petitions for discretionary review shall be filed only upon one or more of the following grounds:

(I) A finding or conclusion of material fact is not supported by substantial evidence.

(II) A necessary legal conclusion is erroneous.

(III) The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.

(IV) A substantial question of law, policy or discretion is involved.

(V) A prejudicial error of procedure was committed.

(iii) Each issue shall be separately numbered and plainly and concisely stated, and shall be supported by detailed citations to the record when assignments of error are based on the record, and by statutes, regulations, or principal authorities relied upon. Except for good cause shown, no assignment of error by any party shall rely on any question of fact or law upon which the administrative law judge had not been afforded an opportunity to pass. Review by the Commission shall be granted only by affirmative vote of two of the Commissioners present and voting. If granted, review shall be limited to the questions raised by the petition.

(B) At any time within 30 days after the issuance of a decision of an administrative law judge, the Commission may in its discretion (by affirmative vote of two of the Commissioners present and voting) order the case before it for review but only upon the ground that the decision may be contrary to law or Commission policy, or that a novel question of policy has been presented. The Commission shall state in such order the specific issue of law, Commission policy, or novel question of policy involved. If a party's petition for discretionary review has been granted, the Commission shall not raise or consider additional issues in such review proceedings except in compliance with the requirements of this paragraph.

(C) For the purpose of review by the Commission under paragraph (A) or (B) of this subsection, the record shall include: (i) all matters constituting the record upon which the decision of the administrative law judge was based; (ii) the rulings upon proposed findings and conclusions; (iii) the decision of the administrative law judge; (iv) the petition or petitions for discretionary review, responses thereto, and the Commission's order for review; and (v) briefs filed on review. No other material shall be considered by the Commission upon review. The Commission either may remand the case to the administrative law judge for further proceedings as it may direct or it may affirm, set aside, or modify the decision or order of the administrative law judge in conformity with the record. If the Commission determines that further evidence is necessary on an issue of fact it shall remand the case for further proceedings before the administrative law judge.

(The provisions of section 557(b) of Title 5 with regard to the review authority of the Commission are expressly superseded to the extent that they are inconsistent with the provisions of subparagraphs (A), (B), and (C) of this paragraph.)

**Regulations**

### 29 C.F.R. 2700 – Procedural Rules of the Federal Mine Safety and Health Review Commission

2700.31 – Penalty settlement

(b) Content of motion—

(1) Factual support. A motion to approve a penalty settlement shall include for each violation the amount of the penalty proposed by the Secretary, the amount of the

penalty agreed to in settlement, and facts in support of the penalty agreed to by the parties.

(2) Certification. The party filing a motion must certify that the opposing party has authorized the filing party to represent that the opposing party consents to the granting of the motion and the entry of the proposed order approving settlement.

2700.76 – Interlocutory review

(a) Procedure. Interlocutory review by the Commission shall not be a matter of right but of the sound discretion of the Commission. Procedures governing petitions for review of temporary reinstatement orders are found at § 2700.45(f).

(1) Review cannot be granted unless:

(i) The ALJ has certified, upon the ALJ's own motion or the motion of a party, that an interlocutory ruling involves a controlling question of law and that in the ALJ's opinion immediate review will materially advance the final disposition of the proceeding; or

(ii) The ALJ has denied a party's motion for certification of the interlocutory ruling to the Commission, and the party files with the Commission a petition for interlocutory review within 30 days of the ALJ's denial of such motion for certification.

(2) In the case of either paragraph (a)(1)(i) or (ii) of this section, the Commission, by a majority vote of the full Commission or a majority vote of a duly constituted panel of the Commission, may grant interlocutory review upon a determination that the ALJ's interlocutory ruling involves a controlling question of law and that immediate review may materially advance the final disposition of the proceeding. Interlocutory review by the Commission shall not operate to suspend the hearing unless otherwise ordered by the Commission. Any grant or denial of interlocutory review shall be by written order of the Commission.

(b) Petitions for interlocutory review. Where the ALJ denies a party's motion for certification of an interlocutory ruling and the party seeks interlocutory review, a petition for interlocutory review shall be in writing and shall not exceed 15 pages. A copy of the ALJ's interlocutory ruling sought to be reviewed and of the ALJ's order denying the petitioner's motion for certification shall be attached to the petition.

(c) Briefs. When the Commission grants interlocutory review, it shall also issue an order which addresses page limits on briefs and the sequence and schedule for filing of initial briefs, and, if permitted by the order, reply briefs.

(d) Scope of review. Unless otherwise specified in the Commission's order granting interlocutory review, review shall be confined to the issues raised in the ALJ's certification or to the issues raised in the petition for interlocutory review.


## 30 C.F.R. 100 – Criteria and Procedures for Proposed Assessment of Civil Penalties, Mine Safety and Health Administration

100.6 - Procedures for review of citations and orders; procedures for assessment of civil penalties and conferences.

(a) All parties shall be afforded the opportunity to review with MSHA each citation and order issued during an inspection. It is within the sole discretion of MSHA to grant a request for a conference and to determine the nature of the conference.

(b) Upon notice by MSHA, all parties will have 10 days within which to submit additional information or request a safety and health conference with the District Manager or designee. A conference request may include a request to be notified of, and to participate in, a conference initiated by another party. A conference request must be in writing and must include a brief statement of the reason why each citation or order should be conferenced.

(c) When a conference is conducted, the parties may submit any additional relevant information relating to the violation, either prior to or at the conference. To expedite the conference, the official assigned to the case may contact the parties to discuss the issues involved prior to the conference.

(d) MSHA will consider all relevant information submitted in a timely manner by the parties with respect to the violation. When the facts warrant a finding that no violation occurred, the citation or order will be vacated. Upon conclusion of the conference, or expiration of the conference request period, all citations that are abated and all orders will be promptly referred to MSHA's Office of Assessments. The Office of Assessments will use the citations, orders, and inspector's evaluation as the basis for determining the appropriate amount of a proposed penalty.

p